**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHARYN F. SELIG                                    :
                                                   :
    and                          :
                                                   :
THE ESTATE OF GLENN L. SELIG                       :
by Charyn F. Selig, Administrator                  :
                                                   :
    and                          :
                                                   :
JOSHUA SELIG                                       :
                                                   :
    and                          :
                                                   :
DREW SELIG                                         :      **COMPLAINT**
                                                   :
    and                          :      Civil Action No._____
                                                   :
LUCILLE SELIG                                      :
                                                   :
    and                          :
                                                   :
ESTATE OF HERBERT SELIG,                           :
by Lucille Selig, Administrator                    :
                                                   :
    and                          :
                                                   :
JILL LASMAN                                        :
                                                   :
    and                          :
                                                   :
THE ESTATE OF ABDULLAH WAHEED                      :
by Alya Waheed, Administrator                      :
                                                   :
    and                          :
                                                   :
ALYA WAHEED                                        :
                                                   :
    and                          :
                                                   :
MINA WAHEED                                        :
                                                   :
    and                          :
                                                   :

1

MEELOD WAHEED                                          :
                                                      :
     and                     :
                                                      :
AMANULLAH WAHEED                                       :
                                                      :
     and                     :
                                                      :
ESTATE OF PAULA L. KANTOR,                             :
by Anthony C. Kantor, Administrator                   :
                                                      :
     and                     :
                                                      :
ANTHONY C. KANTOR                                      :
                                                      :
     and                     :
                                                      :
BARBARA B. KANTOR                                      :
                                                      :
     and                     :
                                                      :
ANTHONY J. KANTOR                                      :
                                                      :
     and                     :
                                                      :
LAURA L. STYRLUND                                      :
                                                      :
     and                     :
                                                      :
SHAWN KENNY                                            :
                                                      :
     and                     :
                                                      :
OKSANA KENNY                                           :
                                                      :
                                                      :
       Plaintiffs,  :
                                                      :
     v.                      :
                                                      :
                                                      :
TALIBAN A/K/A ISLAMIC EMIRATE OF                      :
AFGHANISTAN                                            :
                                                      :
       Defendant.   :
_____ :

## COMPLAINT

## NATURE OF THE CASE

1.      This action arises out of the wrongful death and personal injuries of four American citizens murdered in prolonged terrorist attacks on two different hotels in Kabul, Afghanistan. Glenn L. Selig and Abdullah Waheed, United States citizens, were murdered, and Shawn Kenny, a United States citizen, was injured in a prolonged terrorist attack on the Intercontinental Hotel in Kabul, Afghanistan on January 20 and January 21, 2018 (the "Intercontinental Hotel Attack"). Paula L. Kantor, a United States citizen, was murdered in a prolonged terrorist attack on the Park Palace Hotel in Kabul, Afghanistan on May 13 and May 14, 2015 (the "Park Palace Hotel Attack"), together ("Hotel Attacks").

2.      The Hotel Attacks were carried out by the Afghan Taliban, through its militant terrorist arm the Haqqani Network (together, the Afghan Taliban and the Haqqani Network and the individual terrorist militants belonging to the Afghan Taliban and the Haqqani Network are referred to hereinafter as the "Taliban"). Since 2002, the Afghan Taliban has been designated as a Specially Designated Global Terrorist Entity ("SDGTE") under Executive Order (E.O) 13224, which imposes sanctions and penalties on terrorists and those providing support to terrorists or acts of terrorism.  On September 19, 2012, the U.S. Department of State designated the Haqqani Network as a Foreign Terrorist Organization ("FTO") under s. 219 of the Immigration and Nationality Act of 1965.  These designations have never been lifted.

3.      *In Selig v. Islamic Republic of Iran*, 573 F.Supp. 3d 40 (D.D.C. 2021) ("*Selig I*"), the District Court found that the Taliban was responsible for the Hotel Attacks and the murders of Glenn L. Selig, Abdullah Waheed and Paula L. Kantor.  573 F. Supp. at 53 ("Based on Dr. Gartenstein-Ross's careful recounting of the history between the Taliban and Haqqani network,

the Court finds that the original distinctions between these two groups have collapsed.  Their competing claims of responsibility do not cast doubt on who is responsible for the attacks. They are both to blame."); Id. at 56 ("The Court ...finds that Paula died at the hands of the Taliban and the Haqqani network…"); Id. at 57-58 ("The Court finds that Glenn and Abdullah died at the hands of the Taliban and the Haqqani network...").

4.      Plaintiffs bring claims against the Taliban under the Anti-Terrorism Act, and state tort law. They seek compensatory and punitive damages, interest, fees, and costs.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2333.

6.      The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state-law claims, which arise from the same nucleus of operative facts and from the same case and controversy as Plaintiffs' federal-law claims.

7.      Separately, the Court has diversity jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1332 as the Plaintiffs and Defendant are residents of different domestic and foreign states, and the amount in controversy exceeds $75,000.

## THE PARTIES

**A.  <u>The Plaintiffs</u>**

8.      This action is brought by the Plaintiffs, each in their individual capacity and on their own behalf, and also, where appropriate as administrator or personal representative on behalf of an estate, and on behalf of all those legally entitled to assert a claim as the survivor, family member and/or heir of United States citizens Glenn L. Selig, Abdullah Waheed, Shawn Kenny and Paula L. Kantor.

## The Selig Family

1.      Plaintiff Charyn F. Selig is, and at all times relevant hereto was, the lawful wife of Glenn L. Selig, and a citizen of the United States. Plaintiff Charyn F. Selig can sue and be sued in this Court.

2.      Plaintiff Estate of Glenn L. Selig is represented in this action by its duly appointed Administrator, Charyn F. Selig.  Glenn L. Selig was murdered in the Intercontinental Hotel Attack.  At the time of the acts alleged, and at all other times relevant hereto, Glenn L. Selig was a citizen of the United States.  Plaintiff Estate of Glenn L. Selig can sue and be sued in this Court.

3.      Plaintiff Joshua Selig is, and at all times relevant hereto was, the biological son of Glenn L. Selig and Charyn F. Selig, and a citizen of the United States. Plaintiff Joshua Selig can sue and be sued in this Court.

4.      Plaintiff Drew Selig is, and at all times relevant hereto was, the biological daughter of Glenn L. Selig and Charyn F. Selig, and a citizen of the United States. Plaintiff Drew Selig can sue and be sued in this Court.

5.      Plaintiff Lucille Selig is, and at all times relevant hereto was, the biological mother of Glenn L. Selig, and a citizen of the United States.  Plaintiff Lucille Selig can sue and be sued in this Court.

6.      Plaintiff Estate of Herbert Selig is represented in this action by its duly appointed Administrator, Lucille Selig.  At all times relevant hereto, Herbert Selig was the biological father of Glenn L. Selig, and a citizen of the United States.  Plaintiff Estate of Herbert Selig can sue and be sued in this Court.

7.      Plaintiff Jill Lasman is, and at all times relevant hereto was, the biological sister of Glenn L. Selig, and a citizen of the United States. Plaintiff Jill Lasman can sue and be sued in

this Court.

## The Waheed Family

8.      Plaintiff Estate of Abdullah Waheed is represented in this action by its duly appointed Administrator, Alya Waheed.  Abdullah Waheed was murdered in the Intercontinental Hotel Attack.   At the time of the acts alleged, and at all other times relevant hereto, Abdullah Waheed was a citizen of the United States.  Plaintiff Estate of Abdullah Waheed can sue and be sued in this Court.

9.      Plaintiff Alya Waheed is, and at all times relevant hereto was, the lawful wife of Abdullah Waheed, and a citizen of the United States. Plaintiff Alya Waheed can sue and be sued in this Court.

10.      Plaintiff Mina Waheed is, and at all times relevant hereto was, the biological daughter of Abdullah Waheed and Alya Waheed, and a citizen of the United States. Plaintiff Mina Waheed can sue and be sued in this Court.

11.      Plaintiff Meelod Waheed is, and at all times relevant hereto was, the biological son of Abdullah Waheed and Alya Waheed, and a citizen of the United States. Plaintiff Meelod Waheed can sue and be sued in this Court.

12.      Plaintiff Amanullah Waheed is, and at all times relevant hereto was, the biological son of Abdullah Waheed and Alya Waheed, and a citizen of the United States. Plaintiff Amanullah Waheed can sue and be sued in this Court.

## The Kantor Family

13.      Plaintiff Estate of Paula L. Kantor is represented in this action by its duly appointed Administrator, Anthony C. Kantor.  Paula L. Kantor was murdered in the Park Palace Hotel Attack.   At the time of the acts alleged, and at all other times relevant hereto, Paula L.

Kantor was a citizen of the United States.  Plaintiff Estate of Paula L. Kantor can sue and be sued in this Court.

14.     Plaintiff Anthony C. Kantor is, and at all times relevant hereto was, the biological father of Paula L. Kantor, and a citizen of the United States. Plaintiff Anthony C. Kantor can sue and be sued in this Court.

15.     Plaintiff Barbara B. Kantor is, and at all times relevant hereto was, the biological mother of Paula L. Kantor, and a citizen of the United States. Plaintiff Barbara B. Kantor can sue and be sued in this Court.

16.     Plaintiff Anthony J. Kantor is, and at all times relevant hereto was, the biological brother of Paula L. Kantor, and a citizen of the United States. Plaintiff Anthony J. Kantor can sue and be sued in this Court.

17.     Plaintiff Laura L. Styrlund is, and at all times relevant hereto was, the biological sister of Paula L. Kantor, and a citizen of the United States. Plaintiff Laura L. Styrlund can sue and be sued in this Court.

### **The Kenny Family**

18.     Plaintiff Shawn Kenny, a security guard on duty during the Intercontinental Hotel Attack, is, and at all times relevant hereto was, a citizen of the United States, and further a victim of "torture" as defined in the TVPA and "personal injury" as required by 28 U.S.C. § 1605A. Shawn Kenny was injured in the Intercontinental Hotel Attack. Plaintiff Shawn Kenny can sue and be sued in this Court.

19.     Plaintiff Oksana Kenny is, and at all times relevant hereto was, the lawful wife of Shawn Kenny, and a citizen of the United States. Plaintiff Oksana Kenny can sue and be sued in this Court.

**B.  The Defendant**

20.     Defendant the Taliban a/k/a Islamic Emirate of Afghanistan is a citizen of Afghanistan and a militant, Islamic fundamentalist organization that seeks to establish a Shariah governed state in Afghanistan. The Taliban is a Specially Designated Global Terrorist pursuant to Executive Order 13224 and has long committed and supported terrorist acts, including the terrorist attacks at issue in this suit.

## STATEMENT OF FACTS

### The Taliban

21.     The Soviet Union invaded Afghanistan in 1979 and occupied it until 1989. It managed the country through the puppet regime of Dr. Najibullah Ahmadzai until 1992.  During its occupation, the Soviet Union and Najibullah's regime were forced to defend against a guerilla war mounted by Maoist and mujahideen insurgent groups.  Najibullah's regime collapsed in 1992. An alliance of mujahideen factions formed a coalition government that collapsed after a short time.  Civil war ensued.

22.     The Afghan Taliban was founded by Mullah Mohammad Omar, its supreme commander and spiritual leader, in September 1994, in Kandahar, in this vacuum.  It attracted thousands of fighters from extremist madrassas. It announced its intention to form a pure Islamic state.  By January 1995 it controlled 12 Afghan provinces.  It captured Kabul in September 1996. In October 1997 Mullah Omar declared the Islamic Emirate of Afghanistan, the name by which the Taliban still refer to themselves, and by 1998 it controlled more than 90% of Afghanistan.

23.     In 1996, Osama bin Laden moved from Saudi Arabia to Sudan, and then to Afghanistan, where he was protected by the Afghan Taliban, and permitted to recruit militants, run training camps and plan terrorist attacks.  The United Nations responded by passing Security

Council Resolutions 1267 and 1333, establishing a sanctions regime applicable to the Afghan Taliban, and demanding that the Afghan Taliban end its support of terrorism and turn over bin Laden. The Afghan Taliban refused and continued to harbor bin Laden.

24.     Following bin Laden's bombings of the U.S. embassies in Kenya and Tanzania in 1998, the attack on the USS Cole in 2000, and the attacks on the World Trade Center and the Pentagon in 2001, the United States demanded that the Afghan Taliban surrender bin Laden and close all terrorist training camps. The Afghan Taliban refused. On October 7, 2001 the United States and its allies commenced Operation Enduring Freedom, a military intervention in Afghanistan to remove the Afghan Taliban from power, and prevent the use of Afghanistan as a terrorist base of operations.

25.     The Afghan Taliban had been removed from power by December 9, 2001. The United Nations Security Council passed Resolution 1386 on December 20, 2001, authorizing the establishing of the International Security Assistance Force ("ISAF"), a NATO-led security mission to train Afghan National Security Forces, and assist Afghanistan to rebuild key government institutions. Later, ISAF would lead the fight against the Afghan Taliban. U.S. troops comprised more than half of ISAF. The U.S.-led coalition created conditions that allowed Afghanis to form a democratically elected government, which governed and had its seat in Kabul. Foreign embassies and the ISAF headquarters were also located in Kabul.

26.     Dislodging the United States from Afghanistan had remained the primary objective of the Afghan Taliban since its defeat in 2001, throughout its various leadership transitions. In 2003, the Afghan Taliban declared that it had regrouped under the leadership of Mullah Omar and was ready to commence attacks to expel the United States and ISAF from Afghanistan. In 2004, the then hidden Mullah Omar announced an insurgency against "America

and its puppets" to "regain the sovereignty of our country."  Mullah Omar remained the supreme commander of the Afghan Taliban until his death in 2013.

27.     Mullah Akhtar Mansour succeeded Mullah Omar as supreme commander and Emir of the Taliban in 2015.  Mullah Mansour was targeted and killed by a U.S. drone strike authorized by President Obama in May 2016, as he returned from a visit with top Iranian security officials in Tehran. The purposes of the visit included securing funding and weapons brokered by Iran, and tactical coordination prior to a widespread Taliban offensive in Afghanistan.

28.     Mullah Mawlawi Hibatullah Akhundzada succeeded Mullah Mansour as leader of the Taliban in 2016 and maintained and derived his power from direct and close ties to Iran. Under Mullah Akhundzada, the Taliban objective of dislodging the United States from Afghanistan did not change.

29.     In April 2018, the Taliban rejected Afghan government proposals for negotiations and stated that its forthcoming terrorist attacks would be "mainly focusing on crushing, killing and capturing American invaders and their supporters."

30.     The Afghan Taliban was organized into "shuras," or councils. The Quetta Shura is the senior leadership council. It controls the Afghan province that includes Kabul, and the provinces that surround it.  One of the Afghan Taliban shuras, the Mashhad Shura, is based in Iran.

31.     The total manpower of the Afghan Taliban, including combatants and support elements, was said to exceed 200,000.  The fighters are said to number 150,000, of whom 60,000 are in full time, mobile units and the rest are local militia.  The mobile units were based in Iran and Pakistan for logistical reasons, and because the fighters have family in those countries.

32.     The Afghan Taliban waged a continuous campaign of terror that continued until it

regained control of Kabul and U.S. forces withdrew from Afghanistan in August 2021.  The terror campaign targeted U.S. armed forces, U.S. civilians, Afghan security forces and symbolic civilian targets like hotels frequented by American armed forces personnel, civilian businessmen and diplomats.  The Taliban have claimed responsibility for countless terror attacks in Afghanistan, including by way of example:

a.      the January 14, 2008 attack on the Serena Hotel in Kabul, which at the time was hosting the Norwegian foreign minister and his delegation;

b.      the February 11, 2009 attacks on the Ministry of Justice, the Ministry of Education and the Directorate of Prisons in Kabul, timed the day before the arrival of the new American envoy to Afghanistan, Richard Holbrooke, to the region;

c.      the August 15, 2009 suicide bombing of the NATO headquarters in Kabul;

d.      the May 2010 suicide bombing of a NATO convoy in Kabul, timed to occur as President Hamid Karzai returned from the United States with a U.S.-backed plan to negotiate peace terms with tribal elders;

e.      the June 28, 2011 attack on the Intercontinental Hotel in Kabul, then hosting thirty provincial government officials staying at the hotel to discuss sharing of security responsibilities between the U.S. military and Afghan security forces;

f.      the September 13, 2011 attack on the U.S. Embassy and NATO headquarters in Kabul;

g.      the April 15, 2012 attacks on the U.S., German and British embassies in Kabul;

h.      the June 11, 2013 suicide bombing of the Supreme Court of Afghanistan, declared to be a blow to judges that obey Western powers;

i.      the January 17, 2014 suicide bombing of the Taverna du Liban in Kabul, a restaurant popular with foreign diplomats, aid workers and journalists;

j.      the March 20, 2014 attack on the Serena Hotel in Kabul;

k.      the December 11, 2014 attack on a French high school auditorium;

l.      the May 13 and 14, 2015 attack on the Park Palace Hotel in Kabul;

m.      the August 10, 2015 suicide bombing of the International Airport in Kabul;

n.      the August 1, 2016 suicide bombing of the Northgate Hotel in Kabul, housing foreign military contractors;

o.      the January 20 and 21, 2018 attack on the Intercontinental Hotel in Kabul.

33.      The United States treats the Afghan Taliban as a terrorist organization.  In June 2014, White House National Security Council officials stated that the Afghan Taliban had been added to the list of SDGTEs by executive order in 2002.

34.      In May 2017, State Department officials stated: "Since 2002, the Afghan Taliban has been designated as a Specially Designated Global Terrorist Entity under Executive Order (E.O) 13224, which imposes sanctions and penalties on terrorists and those providing support to terrorists or acts of terrorism.  In addition to the Taliban's designation under E.O. 13224, section 691(d) of the Consolidated Appropriations Act of 2008 mandates that the Taliban is considered a terrorist organization for immigration purposes."  Those designations have never been withdrawn. While he was alive, the U.S. offered $10 million for information leading to the capture of Mullah Omar, the Emir of the Afghan Taliban, through the State Department's Rewards for Justice Program, an effort designed to "fight against international terrorism."   The National Counterterrorism Center also lists "Taliban Presence in Afghanistan" on its global map of "Terrorist Groups."

35.      Numerous individual Afghan Taliban terrorists have been designated.  The State Department designated Qari Saifullah, an Afghan Taliban operational commander and shadow governor, as a Specially Designated Global Terrorist ("SDGT") in January 2014, stating: "As an operational commander, Qari Saifullah has used Taliban fighters to organize terrorist activities against the Government of Afghanistan and Coalition Forces…"  On January 25, 2018, the Treasury Department's Office of Foreign Assets Control ("OFAC") designated four Afghan Taliban terrorists as SDGTs, citing their links to Iranian military training, financing and weapons.

On October 23, 2018, OFAC, acting jointly with fellow member states of the Terrorist Financing Targeting Center ("TFTC"), designated nine Afghan Taliban leaders and their IRGC officer sponsors as SDGTs.

36.     The Afghan Taliban orchestrated many of their terror attacks through the so-called "Haqqani Network."  The U.S. Department of State designated the Haqqani Network as an FTO, and as an SDGTE under E.O. 13224, on September 7, 2012. The designations have never been withdrawn.

37.     The Haqqani Network is an integral part of the Afghan Taliban and not a separate faction. Both Afghan Taliban and Haqqani leadership confirm they are a unified organization, and not separate entities. A defected Afghan Taliban commander stated to the New York Times: "The Taliban and the Haqqani are the same."  In a recent statement posted on its Voice of Jihad website denying responsibility for a certain attack, the Afghan Taliban acknowledged that the Haqqani Network is a part of its organization: "We once again reject all allegations about involvement of Mujahideen of Islamic Emirate in the Kabul incident. None of our Mujahideen including those of Haqqani Sahib had any role in the event…"

38.     Haqqani Network founder Jalaluddin Haqqani, was a member of the Quetta Shura, the Afghan Taliban's executive council.  He is survived by his son Sirajuddin Haqqani.  The Treasury Department designated Sirajuddin as a SDGT under E.O. 13224 on March 11, 2008. Sirajuddin served simultaneously as the Operational Commander of the Haqqani Network, and the Deputy Emir and Military Commander of the Afghan Taliban.  He was also head of one of the two subordinate Taliban shuras directly controlled by the Quetta Shura, the Miran Shah Shura. He installed his brother Khalil as head of the other subordinate Taliban shura directly controlled by the Quetta Shura, the Peshawar Shura.  The Peshawar Shura includes Kabul.  Thus, Sirajuddin

and his brother Khalil had control of Kabul, subject to Quetta Shura oversight.

39.     As Deputy Emir of the Afghan Taliban, Sirajuddin Haqqani was responsible for operational planning for the Taliban, which he undertook on behalf of the Emir Mullah Akhundzada.  He stated in the September 2012 edition of Al Samoud, an official Taliban magazine: "We are one of the fronts of the Islamic Emirate, and we do jihad in the cause of Allah under its banner, and we are proud of our pledge to its Emir [then Mullah Omar] and we carry out its orders and all its regulations."  He continued: "All formations and the employment figures with us are by the Islamic Emirate, and we obey completely in good deeds the Emir of the Believers Mullah Muhammad Omar…"

40.     The Afghan Taliban repeatedly demanded the release of imprisoned Haqqani terrorists.  Sirajuddin Haqqani's younger brother Anas Haqqani was captured in Qatar by U.S. forces while he was meeting with Taliban leaders following their release from Guantanamo, then extradited to Afghanistan and imprisoned at Bagram Airfield.  An Afghan court condemned him to death in 2016 for his involvement in Taliban terrorist attacks.  The Afghan Taliban responded to the sentence by threatening: "A lot of blood will be spilled, and the government will be responsible for all of it."  The Afghan Taliban repeatedly demanded the release of Anas Haqqani. In June 2017, then President Ashraf Ghani signed orders to execute Haqqani terrorists on death row.  The Afghan Taliban responded by threatening "harsh exemplary attacks" if the government harmed any of the prisoners.

41.     The Afghan Taliban regularly claimed responsibility for attacks said to be implemented by the Haqqani Network.  For instance, Sirajuddin Haqqani has a $10 million bounty on his head and is wanted by the FBI for planning the January 14, 2008 terror attack on the Serena Hotel and other terror attacks, for which the Afghan Taliban has claimed responsibility. The State

Department designated Qari Zakir, the Chief of Suicide Operations and training in small arms, heavy weapons and improvised explosive devices for the Haqqani Network, and its operational commander in Kabul, as an SDGT on November 5, 2012. In making this designation, it stated that Zakir and Haqqani fighters he trained carried out the June 28, 2011 attack on the Intercontinental Hotel in Kabul, and the September 13, 2011 attack on the U.S. Embassy and NATO Headquarters in Kabul. The Taliban claimed responsibility for all of these attacks, without objection from the Haqqani Network.

42.     In February 2020, the United States entered into the Doha Agreement which included its commitment to withdraw U.S. troops from Afghanistan. The Taliban commenced a major offensive in May 2021. On August 15, 2021, the Taliban captured Afghanistan's capital of Kabul.

43.     The Taliban's offensive created a humanitarian crisis. After the collapse of Afghanistan's elected government, hundreds of thousands of civilians fled the country.

44.     Although the Taliban has *de facto* control over most of Afghanistan, not a single country has recognized the Taliban as Afghanistan's legitimate government.

52.     Executive Order 13224, which was signed by President Bush on September 23, 2001, and remains in effect, imposes significant sanctions on the Taliban. The Order allows the federal government to block the assets of the Taliban and prohibits anyone in the United States from providing the Taliban with funds, goods, or services.

45.     The Taliban is also subject to significant United Nations sanctions barring anyone from supplying weapons, technical or financial assistance, or assets to the Taliban or its members.

**The January 2018 Taliban Attack on the Intercontinental Hotel:**
**the Murders of Glenn Selig and Abdullah Waheed and the Injury of Shawn Kenny**

46.     The Intercontinental Hotel is a 5-star, government owned hotel located in a residential area in western Kabul, near a former royal palace.  It was Afghanistan's first luxury hotel.  It has six floors, 200 rooms, a swimming pool, gym, internet cafe and four different restaurants.  The hotel frequently hosted Afghan politicians and other VIPs, and was a platform for foreign, especially Western, diplomats, businessmen, journalists and tourists visiting Kabul, who used it as a venue for meetings.  It is a highly symbolic landmark, and a recurring soft target for the Taliban.

47.     On June 28, 2011, at 22:00 local time, nine Taliban terrorists commenced a 5-hour siege of the Intercontinental Hotel in Kabul.  At the time, thirty provincial government officials were meeting at the hotel to discuss the allocation of security responsibilities between the U.S. military and Afghan security forces. The hotel was also hosting an information technology conference.  The terrorists were armed with suicide vests, AK-47 assault rifles, hand grenades and rocket-propelled grenade launchers. The attack resulted in 21 dead and 18 wounded.  The State Department determined and publicly stated in an official notice that Qari Zakir, the Chief of Suicide Operations and training in small arms, heavy weapons and improvised explosive devices for the Haqqani Network, had planned and implemented the attack. The Afghan Taliban claimed responsibility for the attack in an official statement issued by its spokesman Zabiullah Mujahid.

48.     Shortly after his election, President Trump dropped a GBU-43/B Massive Ordnance Blast Bomb (MOAB), the so-called "mother of all bombs", on terrorists in Afghan caves in April 2017.  Then, on August 21, 2017, in a public speech delivered at Fort Meyer, Virginia, President Trump confirmed that his administration had made a major shift in U.S. policy on Afghanistan. He announced that he was lifting restrictions in the rules of engagement

applicable in the theatre that had inhibited U.S. forces in their fight against the Taliban. He stated they now had a "clear mission to defeat the enemy." He stated that he would "expand authority for American armed forces to target the terrorist and criminal networks that sow violence and chaos throughout Afghanistan." He promised the U.S. military would remain in Afghanistan in order to "continue its support for the Afghan government and the Afghan military as they confront the Taliban." He repudiated the Obama Administration's Afghanistan strategy based on a fixed troop drawdown schedule, focusing instead on the "conditions" on the ground. "We are not nation-building again," he said, "we are killing terrorists." The Taliban responded by escalating its terror attacks.

49.     On January 20, 2018, at 21:00 local time, five Taliban terrorists commenced a second siege on the Intercontinental Hotel, this one lasting 17 hours. The terrorists wore suicide vests, and used AK-47 assault rifles, hand grenades and rocket-propelled grenade launchers. They carried portable sound systems playing Taliban war songs. The terrorists sought out and specifically targeted foreigners. One of the terrorists shouted: "Where are the foreigners?" The terrorists went room-to-room, hunting foreigners. After a protracted standoff, a combination of Afghan Special Forces, Afghan Army and Norwegian Special Forces stormed the hotel and killed some of the terrorists. Other terrorists died when they detonated their suicide vests. Many guests were killed or injured jumping or attempting to climb from their room windows. Guests spent terrifying hours overnight hiding in their rooms. Over 160 guests were rescued. The attack resulted in 42 dead, including 4 American citizens, and 14 wounded, including 2 American citizens.

50.     The Afghan Ministry of Interior Affairs and intelligence services released an official statement that the assault had been organized and carried out by terrorists dispatched by

the Haqqani Network.   The Afghan Taliban immediately claimed responsibility for the attack in an official statement issued by its spokesman Zabiullah Mujahid on January 20, 2018 saying that it had "killed tens of foreign invaders and their puppets."   Before the death count had been completed, Mujahid also told Arabic news channel Al Jazeera, "Our five fighters, Bilal, Ayubi, Khalil, Bashar and Abid entered the building and conducted the operation that resulted in the death of 10 foreigners and Afghan government officials."   On January 22, 2018, then Secretary of State Rex Tillerson stated "We have seen the Taliban's claim of responsibility and condemn terrorist groups for their violent campaign against Afghan and foreign personnel working to improve Afghanistan."

51.     Glenn Selig was a devoted and loving husband and father. At the time of the Intercontinental Hotel Attack, he was 50 years old, had been married to Charyn Selig for 17 years, and they had two cherished minor children, a daughter Drew Selig and a son Joshua Selig.  He served on various boards in his local community.  He worked as an award-winning investigative reporter, broadcast journalist and television news anchor for twenty years. He was also an entrepreneur, and founded his own public relations firm, Selig Multimedia, Inc., which specialized in handling crisis management and national publicity campaigns for high profile political clients.

52.     Glenn was in Kabul working on a project to construct a democracy forum event for Afghani women and highlight the work of the democratically elected President Ashraf Ghani. He was present in the Intercontinental Hotel when the attack commenced and murdered by the Taliban terrorists.

53.     Glenn's body was flown to the Armed Forces Medical Examiner ("AFME") at Dover Air Force Base.  The AFME performed a full autopsy examination on his remains on

January 28, 2018.  The report places Glenn at the Intercontinental Hotel at the time of the attack. It concludes that multiple gunshot wounds caused his death, and that the manner of death is homicide.  Glenn suffered two gunshot wounds to the right side of his head, one gunshot wound to his right upper arm, one gunshot wound to the right hip, one gunshot wound to the right groin, two gunshot wounds to the right thigh and one gunshot wound to the left thigh.  Additionally, Glenn suffered fractures to his nasal bones, upper jaws, and lower left jaw.  Additionally, he suffered ballistic flesh wounds to his forehead, face, left eye, chest, abdomen, back, right arm, right elbow, right forearm, right hand, left arm, left hand, right knee, right foot, left thigh and left knee.

54.     Like Glenn Selig, Dr. Abdullah Waheed was a devoted and loving family man. At the time of the Intercontinental Hotel Attack, he was 52 years old, had been married to Alya Waheed for 24 years, and they had three beloved children, a daughter Mina, and two sons Amanullah and a Meelod.

55.     Dr. Waheed was a public figure in Afghanistan.  He was the grandson of the late Mohammad Gul Khan Mohmand, an Afghani literary figure and well-known politician who served as Afghanistan's Home Minister and as a governor of three provinces.  Dr. Waheed was well-known as a respected academic and political analyst.  During the Afghan War and internal hostilities, he escaped with his family to the United States, and lived in the United States full time for over a decade.  He became a U.S. citizen by naturalization in 2008.  He continued to work for the betterment of Afghanistan even after relocating to the United States. He joined Afghanistan's diplomatic corps at the request of President Ashraf Ghani in 2015.  Dr. Waheed served as Afghanistan's Consul General to Peshawar, Pakistan from 2015 to 2017, and then as Consul

General to Karachi, Pakistan from 2017 until his murder by Taliban terrorists. He was noted for his tenacious diplomatic efforts to forge peace between Afghanistan and Pakistan.

56.     Dr. Waheed was in Kabul on official business and staying in the Intercontinental Hotel at the time of the attack.  His murder in the attack was reported in the international press. His Afghan death certificate, issued by the Ministry of Public Health, certifies his death on January 21, 2018, and lists his U.S. passport number. The U.S. Department of State has issued a Report of Death of U.S. Citizen Abroad that identifies the place and time of his death as the Intercontinental Hotel in Kabul, on January 21, 2018.  Afghan intelligence reported to Fox News that Dr. Waheed was killed in the terrorist attack, was disliked by the Taliban, and that the Taliban may have obtained a hotel guest list and used it to identify his name and room number on the list in a targeted killing.

57.     Shawn Kenny had a 10-year military career as a U.S. Army infantry soldier, before being Honorably discharged in the rank of Sergeant First Class in 2005.  After leaving active duty, Shawn worked for a series of security firms providing security to Department of Defense and civilian concerns in Iraq and Afghanistan.  In 2017, Kabul Balk Safety and Security ("KBSS"), an Afghan security firm, hired Shawn to work as Site Security Manager at the Kabul Intercontinental Hotel.  Shawn arrived in Kabul and commenced work in November 2017.  He lived on-site at the hotel.  KBSS' formal responsibility for the security of the hotel commenced January 1, 2018.

58.     On the evening of January 20, 2018, Shawn completed his security shift and was resting in his room.  At 20:00 he heard automatic rifle fire and an explosion in the lobby area. Shawn put on his tactical vest, grabbed his radio, AK-47, as well as an AK-75, and as many magazines as he could carry, and descended the stairs.  He engaged terrorists in the hotel

restaurant to his left and exchanged fire with them.  He then had a gunfight with terrorists in the kitchen area to his right.  Being under fire from two directions, he retreated.  He had calls to coordinate with Special Forces and directed hotel guests to safety.  He fired his weapons to keep the terrorists at bay.  Special Forces directed Shawn to exit the building so that he could brief them and help to plan an assault.  Special Forces then directed Shawn to re-enter the hotel to assist with the assault and navigating the area. On the way inside, terrorists on upper levels threw multiple hand grenades at Shawn that exploded near to him.  Shawn remained inside the hotel until about 04:00 the next morning. When he exited, he remained outside and assisted military personnel.  He was up without sleeping for 25 hours assisting the response.

59.    During the attack, the terrorists inflicted numerous injuries on Shawn.  The terrorists set several sections of the hotel ablaze. Shawn was forced to breathe hot, acrid smoke for a prolonged period, injuring his lungs.  Tear gas burned Shawn's eyes and further injured his lungs.  Terrorists threw multiple hand grenades at Shawn, which exploded in a confined space and damaged his ears and hearing.  Shawn's feet, ankles and hands were injured in the attack. Following the attack, Shawn received medical treatment from physicians at medical facilities operated by West Tex Medical Services, an Afghan company providing medical services to expatriates in Kabul.  He was also treated at the Afghan German Hospital in Kabul.  Upon returning to the United States, he received follow-on medical treatment in a Veterans Affairs medical facility.   Symptoms from Shawn's injuries persist today.

<u>**The May 2015 Taliban Attack on the Park Palace Hotel:**</u>
<u>**The Murder of Paula Kantor**</u>

60.    The Park Palace Hotel is a mid-range hotel located in Kabul, and caters to foreign researchers, journalists, businessmen and aid workers.  The hotel has both guest rooms for short-

term visitors, and a residential area for those living full time in Kabul, including foreign aid workers.  On the evening of May 13, 2015, the hotel was hosting a concert by a well-known Afghani classical musician in support of international aid organizations.  Hotel guests were expected to include the Turkish and Indian ambassadors, and the children of Afghanistan's last monarch Mohammed Zahir Shah, hated by the Taliban.

61.     On May 13, 2015, at 20:30, just as the concert was scheduled to commence, a Taliban terrorist who had previously entered the hotel as a guest, commenced a siege that lasted approximately 5 hours using a suicide vest, an AK-47 rifle, hand grenades and pistols.  The massacre started in the hotel restaurant, then the terrorist went room-to-room looking for foreigners. Norwegian Special Forces and Afghan security forces responded to the attack and retook the building.  The attack resulted in 15 dead and 6 wounded.  54 hostages were rescued.

62.     Afghanistan's intelligence service arrested two Taliban terrorists for planning the Park Palace Hotel Attack.  Both confessed to being members of the Taliban's operational wing the Haqqani Network.  The Afghan Taliban claimed responsibility for the attack in a statement released by its spokesman Zabihullah Mujahid.  Mujahid said the attack was aimed at "invaders" and specifically an "important meeting" of "important people from many invading countries especially Americans."  He also condemned the "promiscuity and indulgence" of the "night-time parties" hosted at the hotel.

63.     Paula L. Kantor served as Senior Researcher and then Director of the Afghanistan Research and Evaluation Unit, the premier policy think tank in Afghanistan, from 2005-2010.  At the time of the attack, she was employed as Senior Scientist by the International Maize and Wheat Improvement Centre, the world's leader in corn and wheat research and development.  Paula was in Afghanistan to start a new project focusing on the role of Afghani women in wheat-growing.

The overriding theme in her work was uplifting the poorest and most vulnerable. She was present in the Park Palace Hotel Attack and murdered by Taliban terrorists.

64.     Paula was shot several times, fighting for her life, and trapped in the lobby of the hotel. She used her cell phone to call outside the hotel, to another hotel guest. The guest handed the phone to a Norwegian Special Forces soldier. The soldier kept Paula on the phone as the team prepared to enter the blacked-out hotel using night vision goggles. Once inside the lobby, a Norwegian medic administered first aid to Paula, who had been shot in her face, and in two other places. The medic accompanied Paula in an ambulance to a nearby hospital, before she died.

65.     The Norwegian Special Forces soldier who spoke with Paula on the phone has said: "Despite her extremely serious gunshot wounds, she had the presence of mind and willpower enough to pick up her cell phone and to call out. Her call made it possible for us to go in earlier and get more civilians out before the terrorists would find them. It hurts to know that we couldn't save her, but what Paula did, was of enormous significance to many other people that night."

**Islamic Republic of Iran Previously Found Liable for their Role in Facilitating these Terrorist Attacks**

66.     The Islamic Republic of Iran has previously been found liable for its roles in facilitating both the Intercontinental Hotel Attack and the Park Palace Hotel Attack, and certain of the Plaintiffs have received judgments and damage awards against Iran for the injuries they sustained in the Hotel Attacks ("*Selig I* Plaintiffs"). *See* Order, *Selig, et al. v. Islamic Republic of Iran*, No. 1:19-cv-02889, Dkt. No. 36 (D.D.C. Nov. 22, 2021) (awarding compensatory damages of $68,022,627.00)[1]; The *Selig I* Plaintiffs have been unable to collect on these judgments and the entire amount of the judgments remains unpaid.

---

[1] On November 21, 2022 the Selig I Plaintiffs, (Estate of Glenn L. Selig, Charyn Selig, Joshua Selig, Drew Selig, Estate of Abdullah Waheed, Ayla Waheed, Mina Waheed, Meelod Waheed, Amanullah Waheed, Estate of Paula L. Kantor, Anthony C. Kantor, Barbara Kantor, Anthony J. Kantor and Laura Styrlund) received judgments in this Court

## COUNT I
## (Violation of the Anti-Terrorism Act, 18 U.S.C. § 2333)
## (For all Plaintiffs)

67.     The Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

68.     The Anti-Terrorism Act ("ATA"), codified at 18 U.S.C. § 2333, authorizes civil suits for United States nationals injured by acts of international terrorism. Specifically, the ATA provides that "[a]ny national of the United States injured in his or her person ... by reason of an act of international terrorism ... may sue therefor ... and shall recover threefold ... damages." 18 U.S.C. § 2333(a).  *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 270 (D.C. Cir. 2018).

69.     ATA liability exists where three elements are satisfied - a United States national suffered an injury, there was an unlawful act of international terrorism; the act of international terrorism caused the injury.  Id.

70.     The Taliban is liable under the ATA for the harm inflicted on Plaintiffs in the Hotel Attacks. By training, arming, directing and deploying its own terrorists to murder United States nationals in the Hotel Attacks, the Taliban independently and directly engaged in an act of international terrorism.

*Injury*

---

for damages against Iran and the IRGC.  In its Memorandum Opinion the Court found that there was satisfactory evidence to prove that deaths of Glenn Selig, Abdullah Waheed and Paula Kantor were caused by the Taliban and the Haqqani network with support from Iran and the IRGC.  *Selig v. Islamic Republic of Iran*, 573 F. Supp. 3d 40, 52-58 (D.D.C. 2021).  On October 28, 2022, five additional Plaintiffs (Shawn Kenny, Oksana Kenny, the Estate of Herbert Selig, Lucille Selig and Jill Lasman) filed a related case to the Selig I action. *Kenny, et al. v. Islamic Republic of Iran*, No. 1:22-cv-03229, Dkt. No. 1 (*Kenny I*). The *Kenny I* action is brought by Shawn Kenny, who was seriously injured in the Intercontinental Hotel Attack, and his spouse Oksana Kenny for their injuries.  In addition, additional near family members of Glenn Selig also have brought a cause of action for their solatium and emotional damage injuries which resulted from the death of their son and brother, Glenn Selig.  While judgment has not yet been entered for these *Kenny I* Plaintiffs, as service on the Defendants is still pending, *the Kenny I* Plaintiffs expect to seek a judgment from this Court for their injuries, based on the findings of liability in *Selig I*, and requesting that the Court adopt its findings and rulings in *Selig I* for the *Kenny I* Plaintiffs.

71.     Plaintiffs have satisfied the first element of ATA liability - injury - since as alleged herein, Glenn L. Selig, Abdullah Waheed and Paula L. Kantor were injured and killed, and Shawn Kenny was severely injured, in the Hotel Attacks, and since their respective family members suffered extreme emotional and psychological injury.

*International Terrorism*

72.     Further, Plaintiffs have satisfied the second element of the ATA liability, since each of the Hotel Attacks constitutes an act of "international terrorism" committed by the Taliban. The ATA defines "international terrorism" as conduct that (a) is comprised of "violent acts or acts dangerous to human life" that violate the criminal laws of the United States, or that would be a violation if committed within the jurisdiction of the United States, (b) was carried out with a terroristic intent, and (c) occurred primarily outside the territorial jurisdiction of the United States. 18 U.S.C §§ 2331(1)(A), (B) and (C).

73.     As required by 18 U.S.C. § 2331(1)(A), the Taliban's conduct as alleged herein put human life in danger and violated numerous federal criminal statutes, each of which is a predicate offense providing an independent basis for concluding that this element of the definition of international terrorism is satisfied here.

     a.   18 U.S.C. § 2332(a) criminalizes the killing of a national of the United States while such national is outside the United States.  The Taliban as a terrorist organization, and its individual leaders, acting through Taliban terrorists, including terrorists from the Taliban's militant Haqqani Network wing, killed Glenn L. Selig, Abdullah Waheed and Paula L. Kantor in Kabul.

     b.   18 U.S.C. § 2332(b) criminalizes conspiracy by a person outside of the United States to kill a national of the United States.   The Taliban as a terrorist

organization, and its individual leaders, conspired with its own terrorists, including terrorists from the Taliban's militant Haqqani Network wing, and the individual terrorists conspired among themselves, to murder Glenn L. Selig, Abdullah Waheed, Paula L. Kantor and others in the Hotel Attacks.

c.   18 U.S.C. § 2332(c) criminalizes engaging in physical violence outside the United States with intent to cause serious bodily injury to a national of the United States or with the result that such injury is caused to a national of the United States. The Taliban as a terrorist organization, and its individual leaders, acting through Taliban terrorists, including terrorists from the Taliban's militant Haqqani Network wing, used physical violence in the Hotel Attacks intending to kill United States nationals, and in fact killed Glenn L. Selig, Abdullah Waheed and Paula L. Kantor in the attacks.

d.   18 U.S.C. § 2332(f) criminalizes the discharge or detonation of explosive or other lethal devices in, into or against a place of public use with the intent to cause death or serious bodily injury, if the offense takes place outside the United States and the victim is a national of the United States or the offense is committed to compel the United States to do or abstain from doing any act. The Taliban as a terrorist organization, and its individual leaders, acting through Taliban terrorists, including terrorists from the Taliban's militant Haqqani Network wing, discharged or detonated explosives and other lethal devices in the Hotel Attacks, including AK-47 assault rifles, hand grenades and rocket-propelled grenade launchers, in hotel premises regularly used by the public, thereby killing United States nationals,

for the purpose of compelling the United States to withdraw its forces from Afghanistan.

e.  18 U.S.C. § 2339 criminalizes harboring or concealing terrorists when an individual "knows" or "has reasonable grounds to believe" that person is about to commit certain crimes, including acts of terrorism. The Taliban as a terrorist organization, and its individual leaders, harbored and concealed Taliban terrorists, including terrorists from the Taliban's militant Haqqani Network wing, knowing that they would be deployed in the Hotel Attacks.

f.  18 U.S.C. § 2339A criminalizes the provision of "material support or resources" while "knowing or intending that they are to be used in preparation for, or in carrying out" certain violent crimes (including *inter alia* those aforesaid). "Material support or resources" includes property, financial support, lodging, training, safehouses, facilities, weapons and transportation. Id. § 2339A(b)(1). The Taliban as a terrorist organization, and its individual leaders, provided to Taliban terrorists, including terrorists from the Taliban's militant Haqqani Network wing, financial support, lodging, training, safehouses, facilities, weapons and transportation, knowing and intending that they be used to commit terrorist attacks including the Hotel Attacks.

74.  As required by 18 U.S.C. § 2331(1)(B), the Taliban's extra-judicial killing of Glenn Selig, Abdullah Waheed and Paula Kantor, and injury on Shawn Kenny, in the Hotel Attacks were committed with the goals of intimidating and coercing the civilian population in Afghanistan, including United States and other nationals visiting Afghanistan and their hosts, and influencing the policies of the United States and its allies in Afghanistan through intimidation and

coercion.  18 U.S.C  §§ 2331(1)(B)(i) and (ii).   The Taliban's terrorist attacks, including the Hotel Attacks, advanced its objective of ejecting the United States and its armed forces from Afghanistan.

75.    As required by 18 U.S.C. § 2331(1)(C), the Hotel Attacks occurred outside the territorial jurisdiction of the United States. All of the relevant conduct occurred outside the United States, including the federal crimes enumerated above.

*Causation*

76.    ATA liability exists when injuries are caused "by reason of" international terrorism.  That causation requirement does not require a showing of "but-for" causation,  rather the test is met when injuries are proximately caused by the defendant's conduct.  *Cabrera v. Black and Veatch Special Projects Corps.*, No. 19-cv-3833-EGS-ZMF, 2021 U.S. Dist. LEXIS 152218 at * 61-62 (D.D.C. Jul. 30, 2021).  Proximate cause exists where (1) the defendant's "acts were a substantial factor in the sequence of events that led to their injuries" and (2) "those injuries [were] reasonably foreseeable or anticipated as a natural consequence of [the defendant's] conduct."  Id. at *63, citing *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018). The Taliban's conduct in arming, training, harboring and deploying Taliban and Haqqani Network terrorists led directly to the Hotel Attacks.  Further, the death and severe physical, mental, emotional injuries that Glenn L. Selig, Abdullah Waheed, Paula Kantor, Shawn Kenny and the family member Plaintiffs suffered were the reasonably foreseeable and natural consequence of the Hotel Attacks. The Taliban anticipated and intended that that their Hotel Attacks would cause serious injuries and death.

WHEREFORE, the Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT II
### (Intentional Infliction of Emotional Distress)
### (For all Plaintiffs except Plaintiff Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor)

77.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

78.    The Hotel Attacks were done with intent to cause severe emotional distress to Glenn L. Selig, Abdullah Waheed and Paula L. Kantor (together, "decedents") and the family member Plaintiffs, or with disregard of a substantial probability of causing severe emotional distress to them. The Hotel Attacks and resulting severe emotional distress were caused by the willful and deliberate acts of Defendant and its agents. Defendant perpetrated the Hotel Attacks with intent to cause severe emotional distress upon decedents and the family member Plaintiffs, or believed that such infliction of severe emotional distress was substantially certain to result from its acts, or with disregard of a substantial probability of causing severe emotional distress to decedents and the family member Plaintiffs. The Hotel Attacks constitute conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

79.    As a direct and proximate consequence of the acts of Defendant as set forth above and the severe emotional distress thereby inflicted, decedents endured, and the family member Plaintiffs have endured and continue to endure, extreme mental anguish and despair, emotional and psychological distress and anxiety, and have thereby suffered solatium damages as set forth below.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT III
### (Aiding and Abetting Intentional Infliction of Emotional Distress)
### (For all Plaintiffs except Plaintiffs Estate of Glenn L. Selig, Estates of Abdullah Waheed and Estate of Paula L. Kantor)

80.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

81.     The Hotel Attacks described above were done with intent to cause severe emotional distress to decedents and the family member Plaintiffs, or with disregard of a substantial probability of causing severe emotional distress to decedents and the family member Plaintiffs. The Hotel Attacks and resulting severe emotional distress were caused by the willful and deliberate acts of terrorists who were knowingly and substantially assisted by Defendant. At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity. The Hotel Attacks constitute conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

82.     As a direct and proximate consequence of the acts of Defendant as set forth above and the severe emotional distress thereby inflicted, the decedents endured, and the family member Plaintiffs have endured and continue to endure, extreme mental anguish and despair, emotional and psychological distress and anxiety, and have thereby suffered solatium damages as set forth below.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

**COUNT IV**
**(Wrongful Death)**
**(For Plaintiffs Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor)**

83.    Plaintiffs the Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor incorporate the preceding paragraphs as if fully set forth herein.

84.    Defendant proximately caused the extra-judicial killing of Glenn L. Selig, Abdullah Waheed and Paula L. Kantor in the Hotel Attacks, in which each of these decedents sustained fatal injuries.

85.    The Hotel Attacks were intended to cause offensive or harmful bodily contact with the decedents without their consent and to put them in apprehension of imminent offensive or harmful bodily contact without their consent. The Hotel Attacks were caused by the willful and deliberate acts of Defendant and its agents, which it carried out for the purpose of inflicting fatal injuries upon the decedents and others or believing that such infliction of fatal injuries was substantially certain to result. By reason of such wrongful conduct, Defendant would have been liable to the decedents if death had not ensued.

86.    As a direct and proximate consequence of the acts of Defendant as set forth above and the deaths of the decedents thereby resulting, the Estate of each decedent has suffered damages including but not limited pain and suffering and economic loss, and the family member Plaintiffs, heirs and beneficiaries who survive the decedents have suffered pain and suffering and pecuniary loss, including but not limited to loss of future aid, assistance, financial support, loss of accretions to the decedents' estates, and loss of care, parental assistance, services, and comfort, and have thereby suffered damages as set forth below.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT V
### (Aiding and Abetting Wrongful Death)
### (For Plaintiffs Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor)

87.     Plaintiffs the Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor incorporate the preceding paragraphs as if fully set forth herein.

88.     Glenn L. Selig, Abdullah Waheed and Paula L. Kantor each sustained fatal injuries in the Hotel Attacks.

89.     The Hotel Attacks were intended to cause offensive or harmful bodily contact with the decedents without their consent and to put them in apprehension of imminent offensive or harmful bodily contact without their consent. The Hotel Attacks were caused by the willful and deliberate acts of Defendant, or of terrorists who were knowingly and substantially assisted by Defendant and were carried out for the purpose of inflicting fatal injuries upon the decedents and others, or believing that such infliction of fatal injuries was substantially certain to result.

90.     At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity. By reason of such wrongful conduct, Defendant would have been liable to the decedents if death had not ensued.

91.     As a direct and proximate consequence of the acts of Defendant as set forth above and the deaths of the decedents thereby resulting, the Estate of each decedent has suffered damages including but not limited to pain and suffering and economic loss, and the family member Plaintiffs, heirs and beneficiaries who survive the decedents have suffered pain and

suffering and pecuniary loss, including but not limited to loss of future aid, assistance, financial support, loss of accretions to the decedents' estates, and loss of care, parental assistance, services, and comfort, and have thereby suffered damages as set forth below.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

**COUNT VI**
**(Survival)**
**(For Plaintiffs Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor)**

92.     Plaintiffs the Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor incorporate the preceding paragraphs as if fully set forth herein.

93.      The deaths of Glenn L. Selig, Abdullah Waheed and Paula L. Kantor were not instantaneous.  Each of them endured terror, severe emotional distress and conscious pain and suffering inflicted by Defendant, prior to succumbing to their excruciating injures.

94.     The Hotel Attacks were intended to cause offensive or harmful bodily contact with the decedents without their consent and to put them in apprehension of imminent offensive or harmful bodily contact without their consent. The Hotel Attacks and decedents' resulting extreme bodily pain and suffering were caused by the willful and deliberate acts of Defendant and its agents, or of terrorists to whom Defendant provided material support, shelter, and protection. Defendant intended to inflict extreme bodily pain and suffering upon the decedents and others, or believed that such infliction of extreme bodily pain and suffering was substantially certain to result from its acts.

95.     The Hotel Attacks were carried out with intent to cause severe emotional distress to the decedents, or with disregard of a substantial probability of causing severe emotional distress to the decedents. The Hotel Attacks and resulting severe emotional distress were caused by the willful and deliberate acts of Defendant and its agents, or of terrorists to whom Defendant provided material support, shelter, and protection. Defendant intended to cause severe emotional distress upon the decedents and others or believed that such infliction of severe emotional distress was substantially certain to result from its acts, or with disregard of a substantial probability of causing severe emotional distress to the decedents. The Hotel Attacks constitute conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

96.     As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted on the decedents prior to death, the decedents suffered damages, including but not limited to conscious pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, and loss of accretions to their estates, as set forth below.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

**COUNT VII**
**(Aiding and Abetting Survival Claim)**
**(For Plaintiffs Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor)**

97.     Plaintiffs Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor incorporate the preceding paragraphs as if fully set forth herein.

98.    The deaths of Glenn L. Selig, Abdullah Waheed and Paula L. Kantor were not instantaneous.  Each of them endured terror, severe emotional distress and conscious pain and suffering in the Hotel Attacks, prior to succumbing to their excruciating injures.

99.    The Hotel Attacks were intended to cause offensive or harmful bodily contact with the decedents without their consent and to put them in apprehension of imminent offensive or harmful bodily contact without their consent. The Hotel Attacks and decedents' resulting extreme bodily pain and suffering were caused by the willful and deliberate acts of Defendant and its agents, or of terrorists who were knowingly and substantially assisted by Defendant.

100.    The Hotel Attacks were carried out with intent to cause severe emotional distress to the decedents, or with disregard of a substantial probability of causing severe emotional distress to the decedents. The Hotel Attacks and resulting severe emotional distress were caused by the willful and deliberate acts of Defendant and its agents, or of terrorists who were knowingly and substantially assisted by Defendant.  The Hotel Attacks constitute conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

101.    At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity.

102.    As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted on the decedents prior to death, the decedents suffered damages, including but not limited to conscious pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, and loss of accretions to their estates, as set forth below.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban

and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## COUNT VIII
### (Assault and Battery)
### (For Plaintiffs Estate of Glenn L. Selig, Estate of Abdullah Waheed, Estate of Paula L. Kantor and Shawn Kenny)

103.    Plaintiffs the Estate of Glenn L. Selig, Estate of Abdullah Waheed and Estate of Paula L. Kantor and Shawn Kenny, incorporate the preceding paragraphs as if fully set forth herein.

104.    Defendant proximately caused the extra-judicial killing of Glenn L. Selig, Abdullah Waheed and Paula L. in the Hotel Attacks, in which each of these decedents sustained fatal injuries.

105.    Defendant proximately caused severe injuries to Plaintiff Shawn Kenny in the Hotel Attacks.

106.    Defendant's acts described above were intentional, malicious, reckless, conspiratorial, criminal, unprivileged, nonconsensual, grossly negligent and negligent. The Hotel Attacks were intended to cause offensive or harmful bodily contact with the decedents and Shawn Kenny without their consent, and the decedents and Shawn Kenny were placed in apprehension of harmful and/or offensive bodily contact without their consent and suffered harmful, offensive bodily contact, from which they ultimately died or suffered serious permanent personal injury.

107.    Defendant acted for the purpose of inflicting extreme bodily pain and suffering upon the Plaintiffs or believed that such infliction of extreme bodily pain and suffering was substantially certain to result from its acts.

108.    By reason of all of the foregoing, the decedents were killed and Shawn Kenny was seriously and severely injured, shocked, bruised and wounded and suffered great physical, mental, and emotional pain and injury, and they were rendered sick, sore, lame and disabled, and were otherwise injured or killed, and/or were confined to a hospital, and/or to bed and home for a period of time by reason thereof, and/or required and received medical care and treatment, and/or incurred medical expenses and will continue to incur future expenses therefor, and were prevented from attending to the duties of their employment and prevented from pursuing the furthering their careers and lost salary and earnings and will lose future salary and earnings.

109.    As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted on the decedents prior to death and on Shawn Kenny, the decedents and Shawn Kenny suffered damages, including but not limited to conscious pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, and loss of accretions to the decedents' estates.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

### COUNT IX
**(Aiding and Abetting Assault and Battery)**
**(For Plaintiffs Estate of Glenn L. Selig, Estate of Abdullah Waheed,**
**Estate of Paula L. Kantor and Shawn Kenny)**

110.    Plaintiffs Estate of Glenn L. Selig, Estate of Abdullah Waheed Estate of Paula L. Kantor and Shawn Kenny incorporate the preceding paragraphs as if fully set forth herein.

111.    The Hotel Attacks were intended to cause offensive or harmful bodily contact with the decedents and Shawn Kenny without their consent, and the decedents and Shawn Kenny were

placed in apprehension of harmful and/or offensive bodily contact without their consent and suffered harmful, offensive bodily contact, from which they ultimately died or suffered serious permanent personal injury.

112.    The Hotel Attacks and resulting extra-judicial killing of decedents and severe injuries to Shawn Kenny were caused by the willful and deliberate acts of Defendant and its agents, or of terrorists who were knowingly and substantially assisted by Defendant.

113.    At the time Defendant provided this substantial assistance, Defendant was aware of its role in illegal or tortious activity.

114.    By reason of all of the foregoing, decedents were killed and Shawn Kennywas seriously and severely injured, shocked, bruised and wounded and suffered great physical, mental, and emotional pain and injury, and they were rendered sick, sore, lame and disabled, and were otherwise injured or killed, and/or were confined to a hospital, and/or to bed and home for a period of time by reason thereof, and/or required and received medical care and treatment, and/or incurred medical expenses and will continue to incur future expenses therefor, and were prevented from attending to the duties of their employment and prevented from pursuing the furthering their careers and lost salary and earnings and will lose future salary and earnings.

115.    As a direct and proximate consequence of the acts of Defendant as set forth above and the injuries thereby inflicted on decedents prior to death and on Shawn Kenny, the decedents and Shawn Kenny suffered damages, including but not limited to pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, and loss of accretions to their estates, as set forth below.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or

equitable relief the Court may deem proper.

## COUNT X
### (Loss of Consortium)
### (For Plaintiffs Charyn F. Selig, Alya Waheed and Oksana Kenny)

116.    Plaintiffs Charyn F. Selig, Alya Waheed and Oksana Kenny incorporate the preceding paragraphs as if fully set forth herein.

117.    At the time of the Hotel Attacks, Charyn F. Selig was married to Glenn Selig, Alya Wahaeed was married to Abdullah Waheed and Oksana Kenny was married to Shawn Kenny at the time they were killed or injured.

118.    The Hotel Attacks were intended to cause offensive or harmful bodily contact with the individuals married to the above-named Plaintiffs at the time without the consent of those individuals and to put those individuals in apprehension of imminent offensive or harmful bodily contact without their consent.

119.    The Hotel Attacks and resulting death and injuries were caused by the willful and deliberate acts of Defendant and its agents, including terrorists to whom Defendant provided material support, shelter, and protection. Defendant acted for the purpose of inflicting physical injuries or death upon the individuals married to the above-named Plaintiffs at the time and others, or believed that such infliction of physical injuries or death was substantially certain to result from its acts.

120.    As a direct and proximate consequence of the acts of Defendant as set forth above and the death and injuries thereby inflicted, the above-named Plaintiffs were caused to sustain injuries including but not limited to a loss of support and services, love, companionship, affection,

society, sexual relations, and solace, and suffered a loss of consortium to the detriment of their

marital relationships and have thereby suffered damages as set forth below.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and

compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable

relief the Court may deem proper.

### COUNT XI
### (Aiding and Abetting Loss of Consortium)
### (For Plaintiffs Charyn F. Selig, Alya Waheed and Oksana Kenny)

121.   Plaintiffs Charyn F. Selig, Alya Waheed and Oksana Kenny incorporate the

preceding paragraphs as if fully set forth herein.

122.   At the time of the Hotel Attacks, Charyn F. Selig was married to Glenn, Selig,

Alya Wahaeed was married to Abdullah Waheed and Oksana Kenny was married to Shawn

Kenny at the time they were killed or injured.

123.   The Hotel Attacks were intended to cause offensive or harmful bodily contact with

the individuals married to the above-named Plaintiffs at the time without the consent of those

individuals and to put those individuals in apprehension of imminent offensive or harmful bodily

contact without their consent.

124.   The Hotel Attacks were caused by the willful and deliberate acts of terrorists who

were knowingly and substantially assisted by Defendant for the purpose of inflicting physical

injuries or death upon the individuals married to the above-named Plaintiffs at the time and others.

At the time Defendant provided this substantial assistance, Defendant was aware of its role in

illegal or tortious activity.

125.   As a direct and proximate consequence of the acts of Defendant as set forth above

and the death and injuries thereby inflicted, the above-named Plaintiffs were caused to sustain

injuries including but not limited to a loss of support and services, love, companionship, affection, society, sexual relations, and solace, and suffered a loss of consortium to the detriment of their marital relationships, and have thereby suffered damages as set forth below.

WHEREFORE, the above-named Plaintiffs demand judgment against the Taliban and compensatory and punitive damages, plus interest, and costs, and any other monetary or equitable relief the Court may deem proper.

## JURY DEMAND

126.    Plaintiffs demand trial by jury on all matters triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Court find the Defendant liable for the acts alleged herein and enter Judgment against the Defendant as follows:

a.    Awarding to Plaintiffs compensatory damages for wrongful death, physical injury, pain and suffering, extreme mental and emotional anguish, solatium and economic loss, against Defendant in amounts set forth herein and as shall be determined at trial, in accordance with evidence to be submitted to this Court;

b.    Awarding to Plaintiffs punitive or exemplary damages against the Defendant for each Plaintiff, as punishment for their continued acts of terror against Americans and provision of material support and resources for, and sponsorship of, others committing acts of terror against Americans, in accordance with evidence to be submitted to this Court;

c.    Awarding to Plaintiffs pre-judgment and post-judgment interest as calculated at the maximum rate allowable by law;

d.    Awarding to Plaintiffs their costs, disbursements, reimbursement of expenses, and allowances of reasonable fees for their counsel and experts;

e.     Leave to amend this Complaint as the interests of justice may allow;

f.     Trial by jury on all matters triable; and

g.     Granting any and all such further relief as the Court may deem just and proper.

Dated: January 27, 2023.

Respectfully submitted,

HEIDEMAN NUDELMAN & KALIK, PC
5335 Wisconsin Avenue, NW, Suite 440
Washington, DC 20036
(202) 463-1818

By: */s/Richard D. Heideman*
Richard D. Heideman (DC Bar No. 377462)
Noel J. Nudelman (DC Bar No. 449969)
Tracy Reichman Kalik (DC Bar No. 462055)
Joseph H. Tipograph (DC Bar No. 997533)

F. R. Jenkins, Esq. (DC Bar No. 04667)
Meridian 361 International Law Group, PLLC
97A Exchange Street, Suite 202
Portland, ME 04101
(866) 338-7087