UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARYN SELIG**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **TALIBAN**, *a.k.a. Islamic Emirate of Afghanistan*, <br><br> Defendant. | Case No. 1:23-cv-00236 (TNM) |

**MEMORANDUM OPINION**

The Taliban took credit for terrorist attacks on two hotels in Kabul, Afghanistan. In 2015, terrorists opened fire on civilians at the Park Palace Hotel, killing 15. *Selig v. Islamic Repub. of Iran* (*Selig I*), 573 F. Supp. 3d 40, 55 (D.D.C. 2021). Three years later, operatives infiltrated the Intercontinental Hotel, turning guns and explosives on guests and killing somewhere between 18 and 43 people. *Kenny v. Islamic Repub. of Iran*, 2024 WL 4297682, at *1–*2 (D.D.C. Sept. 26, 2024). Four families of their victims have been seeking damages ever since, first from the Iranian Republic and now from the Taliban directly. *Selig I*, 573 F. Supp. 3d at 40; *Kenny*, 2024 WL 4297682, at *1. The Taliban has failed to appear here, so Plaintiffs seek default judgment. Pl. Mot. Default J., ECF No. 20. The Court will grant default judgment to most of them, as it has twice before.

**I.**

The facts here track those in this Court's prior two cases involving the same Plaintiffs. So the Court takes judicial notice of the facts presented in *Selig I* and *Kenny* because they "can be accurately and readily determined from [a] source[] whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b)(2); *Kenny*, 2024 WL 4297682, at *2 (taking judicial notice of facts in *Selig I*).

The Court summarizes only the key facts. Plaintiffs are the estates of three victims of the attacks, the victims' families, and one survivor and his wife. At the Park Palace Hotel, the Taliban attacked a concert by a "well-known Afghani classical musician" performing "in support of international aid organizations." *Selig I*, 573 F. Supp. 3d at 55. Terrorists entered through the courtyard, opening fire on the crowd. *Id.* Paula Kantor, an American citizen, was in the lobby when the attack began. *Id.* Police found her several hours later, bleeding from five gunshot wounds across her back and shoulder. *Id.* She died that night in the hospital. *Id.* Kantor's estate seeks both economic loss and pain-and-suffering damages, while her parents and siblings seek solatium damages. *Id.* at 65; Pl. Mot. Default J., ECF No. 20-1, at 25.

Three years later, the Taliban attacked the Intercontinental Hotel. *Kenny*, 2024 WL 4297682, at *1. Shawn Kenny, the sole survivor in this suit, was a security guard there. *Id.* Terrorists snuck into a VIP entrance, murdered security guards, and began systematically exterminating guests in the hotel. *Id.* Kenny evaded gunfire while trying to help people escape. *Id.* He still experiences post-traumatic stress disorder (PTSD) and hearing loss, and the attack exacerbated preexisting injuries to his feet and ankles. *Id.* He and his spouse, Oksana Kenny, seek compensatory damages. Pl. Mot. Default J., ECF No. 20-1, at 26–34.[1]

Glenn Selig and Abdullah Waheed were not fortunate enough to survive the Intercontinental Hotel attack. *Selig I*, 573 F. Supp. 3d at 56–57. Selig died after being shot seven times across his body, then, a few minutes later, suffering two shots to his head. *Id.* He was a 50-year-old award-winning American broadcast journalist who owned a successful public

---

[1] This opinion uses CM/ECF assigned pagination rather than internal pagination.

2

relations firm.  *Kenny*, 2024 WL 4297682, at *2.  Selig had come to Kabul to support an Afghani democracy-promoting project.  *Id.*  He left behind a wife, two children, his parents, and a sister.  Pl. Mot. Default J., ECF No. 20-1, at 24.  His estate seeks pain-and-suffering damages as well as economic loss compensation.  *Id*. at 25–26.  His family requests solatium.  *Id.*

Abdullah Waheed died after a terrorist broke through his barricaded hotel room door and threw an explosive inside.  *Selig I*, 573 F. Supp. 3d at 57.  He was an American citizen, an academic, and a political analyst who promoted peace between Afghanistan and Pakistan.  Expert Report of William Roggio, ECF No. 20-2, at 11.  Waheed left behind a wife and three children.  Pl. Mot. Default J., ECF No. 20-1, at 24.  His estate requests economic loss and pain-and-suffering damages, while his family seeks solatium.  *Id.* at 25.

The Taliban "proudly" claimed responsibility for the attacks.  *Kenny*, 2024 WL 4297682, at *1; *see Selig I*, 573 F. Supp. 3d at 53.  Almost immediately after the Intercontinental Hotel tragedy, the Afghanistan Taliban released a statement:  "[B]y the grace of Allah, dozens were eliminated and wounded among followers of the occupying states and their agents."  *Kenny*, 2024 WL 4297682, at *2.  The same is true of the Park Palace Hotel incident the day afterward.  *Selig I*, 573 F. Supp. 3d at 55.

In 2021, this Court awarded pain-and-suffering damages as well as economic loss to the victims' estates, solatium damages to their family members, and punitive damages to all.  *Selig I*, 573 F. Supp. 3d at 64–78.  Three years later, this Court granted personal injury damages to Shawn Kenny and solatium awards to Glenn Selig's mother, sister, and his father's estate after he died following Glenn's passing; again, the Court awarded punitive damages to all.  *Kenny*, 2024 WL 4297682, at *10–*11.  Both sets of awards were against the Islamic Republic of Iran and the Islamic Revolutionary Guards Corps.  *Selig I*, 573 F. Supp. 3d at 51; *Kenny*, 2024 WL

4297682, at *1, *3. Now, all Plaintiffs from both cases seek damages from the Taliban. Pl. Mot. Default J., ECF No. 20.[2] The Taliban failed to appear here despite being properly served. Service by Publication, ECF No. 17; Entry of Default, ECF No. 19. Thus, Plaintiffs' motion for default judgment is ripe for consideration. Pl. Mot. Default J., ECF No. 20.

## II.

First, this Court must assure itself of jurisdiction over the claim and the parties in order to "enter[] judgment against an absent defendant." *Mwani v. bin Laden*, 417 F.3d 1, 6–7 (D.C. Cir. 2005). The burden of proving personal jurisdiction falls on Plaintiffs, but "they can satisfy that burden with a *prima facie* showing" in a default judgment posture. *Id.* at 7 (cleaned up). They also are not limited to admissible evidence, but instead "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id.*

In this third suit, Plaintiffs seek relief under a different statute that implicates distinct questions. Pl. Mot. Default J., ECF No. 20. Their original suits arose under the Foreign Sovereign Immunities Act, which creates a terrorism exception to the general rule granting foreign sovereigns immunity in federal courts. *Mohammadi v. Islamic Repub. of Iran*, 782 F.3d 9, 13–14 (D.C. Cir. 2015). That made sense because they were suing the state of Iran. *Selig I*, 573 F. Supp. 3d at 51; *Kenny*, 2024 WL 4297682, at *1. Now, Plaintiffs seek damages from the Taliban. Pl. Mot. Default J., ECF No. 20. So they sue under the Anti-Terrorism Act, a statute

---

[2] Plaintiffs may bring this new case under a different cause of action based on the same event. Claim preclusion is an affirmative defense. *Blonder-Tongue Labs., Inc. v. Univ. Illinois Found.*, 402 U.S. 313, 350 (1971). So the Taliban has forfeited it by failing to appear. *Maalouf v. Islamic Repub. of Iran*, 923 F.3d 1095, 1114 (D.C. Cir. 2019) (reversing a district court for raising an affirmative defense sua sponte in a default-judgment FSIA case).

4

that allows a plaintiff to recover from a person, corporation, or partnership directly for terrorism injuries. 18 U.S.C. § 2333.

Subject matter jurisdiction is straightforward. Federal district courts have exclusive jurisdiction over suits brought under this statute. 18 U.S.C. § 2338.

Personal jurisdiction is not so easy. The inquiry involves several questions.

First, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). This Court granted Plaintiffs' motion to serve their Complaint by publication in accordance with Federal Rule of Civil Procedure 4(f)(3). Min. Order Nov. 15, 2023; *cf. Mwani*, 417 F.3d at 11 (authorizing serving al Qaeda by publication). They did so properly. Aff. for Default, ECF No. 18; Pl. Mot. Default J., ECF No. 20-1, at 9–11.

But "service of process does not alone establish personal jurisdiction." *Mwani*, 417 F.3d at 8. Service will suffice to establish personal jurisdiction over a defendant if: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).[3]

As for prong (A), the D.C. Circuit has adopted a burden-shifting framework that requires the defendant to "name some other state in which the suit could proceed." *Mwani*, 417 F.3d at 11. "[S]o long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Id.* Defaulting defendants do not concede to jurisdiction in

---

[3] The D.C. Circuit has found that this long-arm provision "eliminates the need to employ the forum state's long-arm statute" to analyze personal jurisdiction in "some circumstances," including when personal jurisdiction can be found under Rule 4(k)(2). *Mwani*, 417 F.3d at 10; *see Peters v. Est. of Qadhafi*, 2024 WL 4603907, at *4 (D.D.C. Aug. 28, 2024) ("Rule 4(k)(2) . . . allows federal courts to exercise personal jurisdiction over a defendant, without regard to the forum's long-arm statute . . . ."). The Court finds personal jurisdiction under Rule 4(k)(2), so it dispenses with the state long-arm statute analysis. *See infra* Section II.

another state. *Id.* (holding that al Qaeda's default had not conceded jurisdiction in any state, giving rise to personal jurisdiction under Rule 4(k)(2)(A)). So the first prong is justified.

The second prong requires ensuring that the Constitution authorizes jurisdiction, specifically whether personal jurisdiction is "consistent" with the Fifth Amendment's Due Process Clause. *Id*. That Clause "protects defendants from being subject to the binding judgments of a forum with which they have established no meaningful contacts, ties, or relations, and requires fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Id.* (cleaned up). The D.C. Circuit recognizes an exception to Due Process protections for foreign sovereigns because they are generally immune from defending suits. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002). So whether the Taliban is a foreign sovereign decides whether this Court can exercise personal jurisdiction under the Fifth Amendment or whether sovereign immunity applies.[4]

The D.C. Circuit recognizes a gray area between sovereigns and foreign governing entities that do not receive immunity. The *Price* exception does not apply to just "any foreign entity that functions as a government," only "sovereigns." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 48 (D.C. Cir. 2017). For example, when the Palestinian Authority defended a suit in this district, the D.C. Circuit declined to extend the *Price* exception. *Id.* at 48. The court reasoned that because States of the Union are not "persons" under the Due Process Clause, the premise should also hold for foreign states. *Id.* More, sovereigns could avail themselves of international mechanisms for dispute resolution with the United States, but foreign individuals or entities

---

[4] Separately, but importantly, the Anti-Terrorism Act claims that Plaintiffs have pleaded would not even extend to foreign sovereigns because the statute prevents it. *Lawton v. Repub. of Iraq*, 581 F. Supp. 2d 43, 46 (D.D.C. 2008) (holding that 18 U.S.C. § 2337 precludes Anti-Terrorism Act claims against foreign states). So the sovereignty question also decides whether Plaintiffs' claims are precluded as a statutory matter. If sovereign immunity applied, perhaps Plaintiffs could proceed under FSIA or some other mechanism for suing sovereign states. But the ATA exclusively targets private entities. 18 U.S.C. § 2333.

needed the Fifth Amendment's protections. *Id.* at 51. The Palestinian Authority counted as a foreign entity that required protection. *Id.* Ditto for the Turkish Republic of Northern Cyprus, which did not qualify as a foreign sovereign and thereby gained Due Process protections in the D.C. Circuit. *Id.* at 52. In that case, the Circuit emphasized that the United States had not recognized that self-declared state's government as a sovereign. *Id.* (citing *Toumazou v. Turkish Repub. of N. Cyprus*, No. 14-7170 (D.C. Cir. Jan 15, 2016)).

The United States government has not formally recognized the Taliban as a foreign sovereign. *U.S. Relations with Afghanistan*, U.S. Dep't State (Aug. 15, 2022) ("The United States has not yet made a decision as to whether to recognize the Taliban or any other entity as the Government of Afghanistan or as part of such a government.").[5] So the Court declines to extend the *Price* exception here. The Taliban is a mere foreign governing entity, not a foreign sovereign. The Court thus proceeds with the Due Process analysis granted defendants sued under the Anti-Terrorism Act. *Livnat*, 851 F.3d at 55.

"Under the usual due-process standards," "[t]here are two types of personal jurisdiction, either of which can suffice." *Id.* at 56. General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). That connection usually requires that the defendant be "fairly regarded as at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Taliban's "headquarters, officials, and primary activities" are all in Afghanistan. *See Livnat*, 851 F.3d at 56. So it is not subject to general jurisdiction in the United States.

"[S]pecific jurisdiction requires an affiliation between the forum and the underlying controversy." *Id.* This affiliation exists where the "defendant has purposefully directed his

---

[5] https://www.state.gov/u-s-relations-with-afghanistan/.

7

activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Mwani*, 417 F.3d at 12 (cleaned up).  The D.C. Circuit has evaluated contacts with "the nation as a whole" rather than the specific forum, and the "foreseeability of causing injury in the forum" rather than "specific, physical contacts." *Id.* (cleaned up).  "Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum." *Id.*  The Circuit has found specific jurisdiction when terrorists "engaged in unabashedly malignant actions directed at and felt in th[e United States]," even when the incident underlying the suit was the bombing of the Embassy in Kenya, not on American soil.  *Id.* at 13.

The Taliban has "engaged in unabashedly malignant actions directed at" the United States.  *Id.*; Expert Report, ECF No. 20-2.  It has long supported al Qaeda's anti-American terrorism that notably produced the attacks on the Pentagon and the World Trade Center in 2001.  Expert Report, ECF No. 20-2, at 5.  The Taliban itself "publicly stated its motivation was to target Americans." *Id.* at 10.  Toward this end, the Taliban organized its terror groups in Afghanistan to "launch spectacular attacks against U.S., Western, and Afghan interests in Kabul" to "weaken the resolve of the U.S." and "expel[] American and Coalition forces." *Id.* at 9–10.

Taliban spokesman Zabihullah Mujahid claimed credit for the attack on the Park Palace Hotel on May 13–14, 2015, and for the attack on the Intercontinental Hotel on January 20–21, 2018.  *Id.* at 9–10.  Those hotels routinely hosted Americans and other foreigners.  *Id.*  Plaintiffs' expert concluded that both attacks were "targeted in an effort to kill and/or injure Americans in order to further the political and other goals of the Taliban." *Id.* at 10.  More, Plaintiffs' expert suspects that the Taliban specifically targeted Abdullah Waheed, one of the American victims, because he was a passionate advocate for peace between Afghanistan and Pakistan.  *Id.*

Plaintiffs have easily shown that the Taliban purposefully directed its actions at Americans, both at home through its proxy al Qaeda and abroad in Kabul and elsewhere in Afghanistan.

The final Due Process inquiry does not change this conclusion. Even after a court finds that a defendant "purposefully established minimum contacts within the forum, these contacts may be considered" to determine whether personal jurisdiction "would comport with fair play and substantial justice." *Mwani*, 417 F.3d at 14. But "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* No such case exists here, even if the Court attempted to construct it on the Taliban's behalf. As in *Mwani*, the Taliban's calculated choice to direct its terror against U.S. citizens should lead it to "reasonably anticipate being haled into" an American court. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

In sum, the Court holds that it may exercise both subject-matter jurisdiction over Plaintiffs' claims and that Plaintiffs have made their prima facie case that this Court may properly exercise personal jurisdiction over the Taliban.

### III.

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015). So the Court must assess whether Plaintiffs have properly pleaded all necessary elements to "prove [their] entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Id.*; Fed. R. Civ. P. 55.

First, a dispositive but simple question: Were the Taliban's actions "act[s] of international terrorism"? The answer is yes. Liability under that statute "requires proof that (1)

9

a U.S. national suffered an injury; (2) the defendant committed 'an act of international terrorism'"; and (3) that the act of international terrorism caused the injury.  *Karen Kayemeth LeIsrael – Jewish Nat'l Fund v. Educ. for a Just Peace*, 66 F.4th 1007, 1014 (D.C. Cir. 2023); 18 U.S.C. § 2333(a).[6]

To qualify as "international terrorism," an action must "(A) involve violent acts or acts dangerous to human life that are or that would be a criminal violation if committed within the jurisdiction of the United States or of any State"; (B) that "appear to be intended" to intimidate or coerce a civilian population or government policy, or "affect the conduct of the government by mass destruction, assassination, or kidnapping"; and "(C) occur outside the United States' territorial jurisdiction or transcend national boundaries." *Karen Kayemeth LeIsrael*, 66 F.4th at 1014 (internal quotation marks omitted); 18 U.S.C. § 2331(1)(A)–(C).  The Court addresses these prongs working backwards:  The attacks occurred outside the United States' territorial jurisdiction; the Taliban and its proxies explicitly stated that their purpose was to kill Americans, *see supra* Section II, and the expert report credibly attests that this campaign aimed to expel American forces while intimidating the civilian population; it is a crime in the United States to murder.

"The statute does not contain an express intent requirement, but courts that have explicitly addressed intent under § 2333 have concluded that the statute requires some kind of deliberate misconduct by the defendant, *i.e.*, something more than mere negligence, in light of the treble damages provision." *Owens v. BNP Paribas SA*, 235 F. Supp. 3d 85, 90 (D.D.C.

---

[6] The Court evaluates Plaintiffs' evidence supporting default judgment—rather than their personal jurisdiction evidence described *supra*—under the Rule 55 standard for the United States, its officers, and its agencies.  Fed. R. Civ. P. 55(d).  That standard allows default judgment if the "claimant establishes a claim or right to relief by evidence that satisfies the court."  *Id.*  The D.C. Circuit has not discussed a standard of review for the merits portion of an ATA default judgment inquiry.  So the Court takes the higher standard of review in Rule 55, even though it applies to a sovereign and its agencies, because the evidence here meets it.

2017); *accord Wultz v. Islamic Repub. of Iran*, 755 F. Supp. 2d 1, 42 (D.D.C. 2010). Even reading an intent requirement into the criminal act requirement in (A), the facts here easily satisfy it. The terrorists intentionally murdered these victims and injured Shawn Kenny, foreseeably emotionally damaging their families, and claimed responsibility for that intent publicly afterward. *Selig I*, 573 F. Supp. 3d at 55–57, 60; *Kenny*, 2024 WL 4297682, at *1–*3. In sum, both attacks were works of "international terrorism" under the ATA's three-prong definition. That criminal liability "creates civil liability under the Anti-Terrorism Act" for each plaintiff that satisfies the rest of the test. *Est. of Parsons v. Palestinian Auth.*, 952 F. Supp. 2d 61, 70 (D.D.C. 2013).

## IV.

Each Plaintiff has recovered damages against Iran for the same fact pattern under FSIA except for Oksana Kenny. *Selig I*, 573 F. Supp. 3d at 64–75; *Kenny*, 2024 WL 4297682, at *9–*11. These awards carry over seamlessly to their ATA claims against the Taliban. As explained below, all save Oksana Kenny satisfy the three open prongs of the ATA cause of action, that is, they are (1) U.S. nationals who suffered (2) injuries (3) proximately caused by acts of international terrorism.

## A.

First, all but one of the Plaintiffs is a national, or an "estate," "survivor[]" or "heir[]" of a national. 18 U.S.C. § 2333(a) ("Any national of the United States injured . . . or his or her estate, survivors, or heirs, may sue . . . ."). The three victims and Shawn Kenny are U.S. nationals, as are Glenn Selig's parents and sister. Pl. Mot. Default J., ECF No. 20-1, at 7, 16, 38–40. The victims' immediate family members are all "survivors" or "heirs" of U.S. nationals. *Selig I*, 573

F. Supp. 3d at 59 ("Plaintiffs here easily meet this requirement because the three decedents were all citizens."); *id.* (referring to all plaintiffs here save Glenn Selig's parents and sister).

Oksana Kenny's claim fails here. She is an Uzbekistani national who is neither a survivor nor an heir of a U.S. national because her husband survived the attacks. *Kenny*, 2024 WL 4297682, at *7; Pl. Mot. Default J., ECF No. 20-1, at 21 n.10. She thus does not qualify for the ATA cause of action. Pl. Mot. Default J., ECF No. 20-1, at 22. Belatedly recognizing this, she tries to amend her complaint in her motion for default judgment by adding a state law cause of action. *Id.* at 30–34. But as this Court found in *Kenny*, federal procedure rules do not allow her to raise a new claim in a motion for default judgment. 2024 WL 4297682, at *8. The rules allow plaintiffs to later incorporate omitted issues that have been "tried by the parties' express or implied consent." Fed. R. Civ. P. 15(b)(2). But a defendant who did not "consent[] to the state tort law claim before entry of default when it had no notice of it from the Complaint" cannot try an issue by "express or implied consent." *Id.* As described in *Kenny*, Oksana Kenny's procedural attempt also violates two other civil procedural rules. 2024 WL 4297682, at *8 (pinpointing Fed. R. Civ. P. 5(a)(2) and 54(c)). Her claim for damages will thus be denied because she is not a U.S. national, depriving her of the ATA cause of action, and she does not properly plead a state law cause of action.

**B.**

Second, each of the remaining Plaintiffs suffered an injury for the purposes of the ATA. The statute creates a private right of action for "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a). But the ATA does not define "injured." Most courts have relied on legislative history to conclude that Congress intended to codify "common law tort principles and to extend civil

12

liability for acts of international terrorism to the full reaches of traditional tort law." *See Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1010–11 (7th Cir. 2002) (so concluding in a portion of the panel decision "left untouched in *en banc* review," as described in *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011)), *aff'd in part and rev'd in part*, 549 F.3d 685 (*Boim II*) (7th Cir. 2008) (en banc); *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 77 (S.D.N.Y. 2006).

Alternatively, two courts in this district have looked to the plain meaning of the term "injured" to guide their reasoning. *Wultz v. Islamic Repub. of Iran*, 755 F. Supp. 2d 1, 41, 43 (D.D.C. 2010); *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 182 & n.11 (D.D.C. 2004) (nonetheless citing the legislative-history approach). The Court prefers grounding its reasoning in statutory text rather than legislative history. *See generally* Antonin Scalia & Bryan Garner, *Reading Law* 388 (2012) ("[U]se of legislative history is not just wrong; it violates constitutional requirements of nondelegability, bicameralism, presidential participation, and the supremacy of judicial interpretation . . . ."). More, the seminal opinion touting the legislative-history approach evaluated whether the ATA incorporated aiding and abetting liability, which Congress has since resolved textually with an aiding-and-abetting amendment in 2016. 18 U.S.C. § 2333(d) (adding an aiding-and-abetting provision); *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483–84 (2023) (recognizing the expansion after 18 U.S.C. § 2333(d)); *Boim*, 291 F.3d at 1009–21 (evaluating whether the ATA incorporated aiding-and-abetting before the amendment). So the legislative-history approach is outdated, both methodologically and textually.

The ATA's text describes an "injur[y] in his or her person, property, or business." 18 U.S.C. § 2333(a). The relevant Black's Law Dictionary defines "injure" as "[t]o violate the legal

right of another or inflict an actionable wrong[; t]o do harm to, damage, or impair[; t]o hurt or wound, as the person; to impair the soundness of, as health; to damage." *Injure*, Black's Law Dictionary (6th ed. 1990) (published two years before the ATA was enacted). "[I]njury" is defined as "[a]ny wrong or damage done to another, either in his person, rights, reputation, or property[; t]he invasion of any legally protected interest of another." *Injury*, Black's Law Dictionary (6th ed. 1990) (citing Restatement Second, Torts § 7). This expansive definition encompasses most causes of action that would define an "actionable wrong."

All the remaining Plaintiffs' injuries qualify. Wrongful death matches the above definitions easily. *Selig I*, 573 F. Supp. 3d at 62–63. Shawn Kenny alleges physical suffering from lung and ankle injuries as well as mental suffering from PTSD. *Kenny*, 2024 WL 4297682, at *9–*10.

The victims' families plead "mental anguish, emotional pain and suffering, and loss of society, companionship, comfort, protection, marital care, attention, advice or counsel" in their solatium claims. *Biton*, 310 F. Supp. 2d at 182 (cleaned up) (finding that mental anguish qualifies for ATA treble damages after blending the dictionary-definition and tort-law approaches); *Selig I*, 573 F. Supp. 3d at 63; *Kenny*, 2024 WL 4297682, at *10–*11. Non-physical injuries are "cognizable under the plain language, as well as a common-sense interpretation, of the ATA." *Biton*, 310 F. Supp. 2d at 182. "[I]njure" includes "inflict[ing] an actionable wrong." *Injure*, Black's Law Dictionary (6th ed. 1990).

It is black-letter law that solatium is an actionable wrong, even though it redresses an emotional harm. *Biton*, 310 F. Supp. 2d at 182. And, as one court has put it, "[i]t seems unlikely that Congress would have considered damage to a car to constitute an 'injury' for purposes of the ATA but not emotional trauma and a loss of companionship from the death of a spouse occurring

14

in the same attack." *Id.* So all three types of injury—wrongful death, physical injury, and intentional infliction of emotional distress—qualify as "an actionable wrong."

Finally, proximate causation merits little discussion. There is no factual ambiguity that the victims' deaths, Shawn Kenny's injuries, and their families' losses were foreseeably caused by the two hotel attacks in Kabul. *See supra* Section I.

In sum, all Plaintiffs save Oksana Kenny fulfill the ATA's requirements for suffering injury proximately caused by an international act of terrorism.

## C.

Finally, the remaining Plaintiffs will receive treble damages as the ATA requires. An injured U.S. national "shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333(a). Plaintiffs' previous awards under FSIA pose no bar to other damages under the ATA. *See Kaplan v. Cent. Bank of the Islamic Repub. of Iran*, 896 F.3d 501, 505–06 (D.C. Cir. 2018) (remanding ATA claims after the district court approved a FSIA award).

The limited case law addressing ATA damages in this circuit has relied heavily on FSIA proceedings for both evidence and damages calculations. Courts in this district have simply trebled previously awarded FSIA damages to turn them into ATA awards, relying on FSIA evidentiary hearings with the same plaintiffs and the same facts. *See, e.g.*, *Rubin v. HAMAS–Islamic Resistance Movement*, No. 02-0975, 2004 U.S. Dist. LEXIS 20883, at *9 (D.D.C. Sep. 27, 2004) (using a previous case's FSIA evidentiary hearing as ATA evidence to avoid "reiterat[ing] the emotionally excruciating testimony"); *Pescatore v. Palmera Pineda*, 345 F. Supp. 3d 68, 77–78 (D.D.C. 2018) (awarding solatium damages under FSIA and trebling them under the ATA).

15

This Court similarly finds that the commonly accepted *Heiser* framework for assessing terrorism damages under FSIA may be used for terrorism injuries under the ATA. *See Selig I*, 573 F. Supp. 3d at 64. *Heiser* reasons that FSIA requires a foreign state to be "liable in the same manner and to the same extent as a private individual under like circumstances," then sets forward standard awards for terrorism victims and their relatives. *Est. of Heiser v. Islamic Repub. of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006). Its framework was designed to mirror damages incurred by "private individuals," so it translates easily onto a statute that targets individuals, corporations, and other non-sovereign entities.

The *Heiser* framework is merely persuasive. *Kenny*, 2024 WL 4297682, at *8. But this Court has used it as a "blueprint" in the two previous cases about these Plaintiffs. *Id.*; *Selig I*, 573 F. Supp. 3d at 64.

Accordingly, the Court will grant Plaintiffs' requests to treble the damages already awarded in *Selig I* and *Kenny*. These are apportioned as follows:

| Plaintiff | Type of Award | Monetary Value | Treble Value |
|---|---|---|---|
| Estate of Paula Kantor | Pain and Suffering | $1,000,000 | $3,000,000 |
|  | Economic Loss | $1,694,185 | $5,082,555 |
| Anthony Kantor (Paula's father) | Solatium | $5,000,000 | $15,000,000 |
| Barbara Kantor (Paula's mother) | Solatium | $5,000,000 | $15,000,000 |
| Laura Strylund (Paula's sister) | Solatium | $2,500,000 | $7,500,000 |
| Anthony Kantor (Paula's brother) | Solatium | $2,500,000 | $7,500,000 |
| Estate of Glenn Selig | Pain and Suffering | $1,000,000 | $3,000,000 |
|  | Economic Loss | $2,574,836 | $7,724,508 |
| Charyn Selig (Glenn's wife) | Solatium | $8,000,000 | $24,000,000 |
| Drew Selig (Glenn's daughter) | Solatium | $6,250,000 | $18,750,000 |
| Joshua Selig (Glenn's son) | Solatium | $6,250,000 | $18,750,000 |
| Estate of Herbert Selig (Glenn's father) | Solatium | $6,250,000 | $18,750,000 |
| Lucille Selig (Glenn's mother) | Solatium | $5,000,000 | $15,000,000 |
| Jill Lasman (Glenn's sister) | Solatium | $2,500,000 | $7,500,000 |
| Estate of Abdullah Waheed | Pain and Suffering | $750,000 | $1,500,000 |
|  | Economic Loss | $1,253,606 | $3,760,818 |
| Alya Waheed (Abdullah's wife) | Solatium | $8,000,000 | $24,000,000 |
| Amanullah Waheed (Abdullah's son) | Solatium | $5,000,000 | $15,000,000 |
| Mina Waheed (Abdullah's daughter) | Solatium | $5,000,000 | $15,000,000 |
| Meelod Waheed (Abdullah's son) | Solatium | $6,250,000 | $18,750,000 |
| Shawn Kenny | Pain and suffering | $5,000,000 | $15,000,000 |
|  | **Total:** |  | **$259,567,881** |

Despite this award, Plaintiffs should not double-recover for the same harm. *C.f., Honeycutt v. United States*, 581 U.S. 443, 447–48 (2017) ("If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount."). So the overall amount that the Plaintiffs will recover between all three judgments will be capped at the treble-damages ATA award, $259,567,881.

The Court agrees with Plaintiffs' request to make the Taliban jointly and severally liable for the previous awards against Iran. Pl. Mot. Default J., ECF No. 20-1, at 25–26. But only the Taliban will be jointly and severally liable for Iran's award. Iran will not be jointly and severally liable for the ATA treble damages because that statute does not run against foreign sovereigns. To avoid confusion: The Taliban and Iran will be jointly and severally liable for $173,545,254. The Taliban alone will be responsible for the remaining $86,022,627.[7]

Finally, Plaintiffs request attorney fees and post-judgment interest. The ATA awards attorney fees to successful plaintiffs. 18 U.S.C. § 2333(a) (stating that a plaintiff "shall recover . . . attorney's fees"). But Plaintiffs have provided no information about the fees and costs sought. Their motion will be granted as their statutory right, but they must file a supplemental brief detailing a sum certain and supporting information by April 30, 2025. Plaintiffs also ask for post-judgment interest. Pl. Mot. Default J., ECF No. 20-1, at 42. As in *Selig I*, the Court grants Plaintiffs post-judgment interest at the statutory rate. 573 F. Supp. 3d at 78.

---

[7] *Kenny* awarded Plaintiffs cumulatively $37.5 million, comprised of $18.75 million for compensatory damages and the same for punitive. *Kenny*, 2024 WL 4297682, at *11. *Selig I* awarded Plaintiffs $136,045,254, comprised of $68,022,627 for compensatory and the same for punitive.

## V.

For all these reasons, Plaintiffs' Motion for Default Judgment will be granted in part and denied in part. It is only denied insofar as it pertains to Plaintiff Oksana Kenny's request for default judgment. A separate order will issue.

Dated: March 31, 2025                                    TREVOR N. McFADDEN
                                                         United States District Judge