**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **CHARYN SELIG**, *et al.*,<br><br>              Plaintiffs,<br><br>              v.<br><br>**TALIBAN**, *a.k.a. Islamic Emirate of Afghanistan*,<br><br>              Defendant. | Case No. 1:23-cv-00236 (TNM) |

**MEMORANDUM ORDER**

This Court entered judgment for Plaintiffs on their claims under the Anti-Terrorism Act, 18 U.S.C. § 2333, finding the Taliban liable for $86,022,627 in damages and the Taliban and Iran jointly and severally liable for $173,545,254, for a total of $259,567,881.  Mem. Op., ECF No. 21, at 18.  Plaintiffs then filed supplemental briefing requesting attorney's fees of $21,693,156—25 percent of the damages before trebling—and $22,420.72 in costs.  Pls.' First Supp. Mem., ECF No. 24, at 1.  At the Court's request, Plaintiffs followed up with a second supplemental brief calculating their attorney's fees under the lodestar method, which amount to $190,990, and requesting costs of $14,270.72.  Pls.' Second Supp. Mem., ECF No. 26, at 12. Finding that nearly $22 million in fees is plainly unreasonable for this default judgment, the Court will award Plaintiffs $197,920 in attorney's fees and $20 in costs.

**I.**

Start with attorney's fees.  The Anti-Terrorism Act provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor . . . and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's

fees." 18 U.S.C. § 2333(a). Attorney's fees are commonly calculated either via the lodestar method or as a contingency fee. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 801–03 (2002). The lodestar method calculates fees based on a reasonable hourly rate multiplied by the number of hours worked, whereas the contingency fee amounts to a percentage of the total damages award.

"[T]he lodestar method today holds sway in federal-court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation." *Id.* at 802. District courts have assumed that the lodestar method applies to claims under § 2333. *See, e.g.*, *Miller v. Juarez Cartel*, 627 F. Supp. 3d 1043, 1047–48 (D.N.D. 2022); *Ests. of Ungar & Ungar ex rel. Strachman v. Palestinian Auth.*, 325 F. Supp. 2d 15, 68 (D.R.I. 2004), *aff'd*, 402 F.3d 274 (1st Cir. 2005).

Plaintiffs nonetheless urge the Court to award a contingency fee of $21,693,156, *i.e.*, 25 percent of the damages before trebling. Pls.' Second Supp. Mem. at 1. They cite *Gisbrecht* in support of that demand. *See id.* at 5–6. *Gisbrecht* involved an award of attorney's fees for a successful social security benefits claimant under 42 U.S.C. § 406, which provides that "the court may determine and allow as part of its judgment a reasonable fee for [an attorney's] representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of [the favorable] judgment." 42 U.S.C. § 406(b)(1)(A); *see Gisbrecht*, 535 U.S. at 795. That attorney's fee is payable "out of, and not in addition to, the amount of [the claimant's] past-due benefits." 42 U.S.C. § 406(b)(1)(A). In this setting, the *Gisbrecht* Court ruled that § 406 does not "override customary attorney-client contingent-fee agreements" but rather "instructs courts to review for reasonableness [the] fees yielded by those agreements." 535 U.S. at 808–09.

*Gisbrecht*'s holding does not displace the lodestar method here.  After all, *Gisbrecht* repeatedly recognized the lodestar method as "the guiding light of [courts'] fee-shifting jurisprudence."  *Id.* at 801 (cleaned up); *see also id.* at 806 ("Furthermore, we again emphasize, the lodestar method was designed to govern imposition of fees on the losing party.").  In fee-shifting cases, "nothing prevents the attorney for the prevailing party from gaining additional fees, pursuant to contract, from his own client."  *Id.*  Taking their cue from *Gisbrecht*, courts routinely deploy the lodestar method in fee-shifting contexts.  *See, e.g.*, *Driscoll v. George Washington Univ.*, 55 F. Supp. 3d 106, 113 (D.D.C. 2014) ("The lodestar approach has emerged as the prevailing method of fee calculation in fee-shifting cases for good reason.").

Nor does the statutory language support Plaintiffs' bid for a contingency fee.  By its plain text, the Anti-Terrorism Act is a fee-shifting statute—providing that prevailing plaintiffs "shall recover threefold the damages [they] sustain[] *and* the cost of the suit, including attorney's fees." 18 U.S.C. § 2333(a) (emphasis added).  The conjunctive "and" signals that successful Anti-Terrorism Act plaintiffs recover costs and attorney's fees from the defendants.  Although § 2333(a) does not expressly limit attorney's fees to a "reasonable" amount as some other statutes do, that absence does not dictate a contingency fee over the lodestar amount.  Indeed, Plaintiffs have identified no case in which a court has awarded a contingency fee under § 2333(a), nor is the Court aware of any.

Plaintiffs also point to the Justice for United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144, as proof that "Congress has, in effect, already determined that a 25% contingency fee is a reasonable attorneys' fee in civil counter-terrorism litigation."  Pls.' First Supp. Mem. at 6.  But that statute caps attorney's fees at 25 percent only for "any payment made under this section."  34 U.S.C. § 20144(f)(1).  It thus applies only to claims "against a foreign

state that was designated as a state sponsor of terrorism." *Id.* § 20144(c)(2)(A)(i). Meanwhile, this Court has already determined that the Taliban does not qualify as a foreign state. *See* Mem. Op. at 7 ("The Taliban is a mere foreign governing entity, not a foreign sovereign."). Because the Taliban is not a foreign state, § 20144 offers little guidance for this case.

More, § 20144 allows plaintiffs to recover from a fund, not the defendants themselves, *see* 34 U.S.C. § 20144(d), which further weakens any analogy to the Anti-Terrorism Act's fee-shifting provision. Ultimately, unlike the statute in *Gisbrecht* and the Justice for United States Victims of State Sponsored Terrorism Act, there is no applicable statutory language suggesting that a 25 percent contingency fee is appropriate here.

Finding no footing in the statute, Plaintiffs pivot to contract. They emphasize that they "are contractually obliged to pay to the Law Firms contingency fees that exceed the 25% requested herein." Pls.' First Supp. Mem. at 6. They suggest that it would be reasonable for the Court to "award[] attorney fees in an amount that approximates their contractual liability, and is even substantially below the amounts agreed upon between Plaintiffs and the Law Firms." *Id.* But Plaintiffs find no support for this effort to make their contingency contract the touchstone of reasonableness. Quite the opposite: "[T]he reasonableness of the [attorney's] fees requested is a judgment call which only the Court can make." *Boland v. Hetrick*, 277 F. Supp. 3d 112, 118 (D.D.C. 2017) (cleaned up); *see also, e.g.*, *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998) ("To the contrary, a district court is not bound by the agreement of the parties as to the amount of attorneys' fees." (cleaned up)).

Perhaps recognizing the shaky legal ground on which their bid rests, Plaintiffs back off from asking for the full contingency amount, which would "exceed[] 33%" of the damages award. *See* Pls.' First Supp. Decl. Ex. A, ECF No. 24-1, ¶ 4. This implicitly shows Plaintiffs

recognize the Court cannot be bound by their continency agreement.  In a sense, then, Plaintiffs' demand for $21,693,156 is modest compared to the more than $28,000,000 that they could obtain under their theory.  And if their contract were the sole yardstick, what would stop them from agreeing on a 99% contingency and raking in an $85,000,000 attorney's fee?

The Supreme Court has rejected another attempt to restrict the district court's discretion over the reasonableness of attorney's fees.  In *Blanchard v. Bergeron*, 489 U.S. 87 (1989), the plaintiff had prevailed in his suit under 42 U.S.C. § 1983 and had secured attorney's fees under § 1988, which empowers district courts to award a prevailing § 1983 plaintiff "a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b); *see Blanchard*, 489 U.S. at 88–89.  On appeal, the Fifth Circuit "reduced the award because [the plaintiff] had entered into a contingent-fee agreement with his lawyer, under which the attorney was to receive 40% of any damages awarded should [the plaintiff] prevail in his suit."  *Id.* at 90 (footnote omitted).  In other words, because the district court's attorney's fee award was larger than the contingency fee, the Fifth Circuit cut it down to size.

The Supreme Court reversed.  In its eyes, the Fifth Circuit had unduly confined the district court's discretion.  As the Court explained, "[i]t is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case."  *Id.* at 96.  That discretion "should not be limited by the contractual fee agreement between plaintiff and counsel."  *Id.*  As the Court emphasized, "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees."  *Id.* at 93.  By the same token, "[t]he defendant is not . . . required to pay the amount called for in a contingent-fee contract if it is *more* than a reasonable fee

5

calculated in the usual way." *Id.* (emphasis added).  That same rule applies here—and it foils Plaintiffs' effort to equate the contractual fee with a reasonable one.

Exercising its proper discretion, the Court finds that Plaintiffs' requested $20+ million in attorney's fees exceed all bounds of reasonableness.  This is a default judgment case under the Anti-Terrorism Act.  Mem. Op. at 1.  By Plaintiffs' own admission, this lawsuit rests on the legwork of others.  *See* Pls.' First Supp. Mem. at 5 ("The judgment of the Court in this case relied heavily on its judgment in the related companion case *Selig I.*"); *see Selig v. Islamic Republic of Iran*, 573 F. Supp. 3d 40 (D.D.C. 2021).  Much of the factual and legal analysis here was copied from prior cases involving the same bombing.  In their lodestar calculation, Plaintiffs represent that they billed 257.9 hours to this case.  Pls.' Second Supp. Mem. at 9–10.  If the Court were to award the full contingency fee, that would be an hourly rate of more than *$84,000*. The Court finds that this case does not warrant so whopping a sum.

All told, the Court concludes that the lodestar method is the proper approach to attorney's fees in this case.  The Court finds that Plaintiffs' proposed lodestar calculation reflects a reasonable hourly rate and number of hours worked, so it will award the requested amount of $190,990.  *See id.* at 9–11.

## II.

Turn to costs.  Plaintiffs ask to recover various expenses totaling $14,270.72.  *Id.* at 12. The Court will grant a fraction of that sum.  Specifically, it will add the $6,930 cost for service by publication to the lodestar calculation and award $20 in docket fees.

Recall that § 2333 provides that a prevailing plaintiff "shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees."  18 U.S.C. § 2333(a).  The statute does not elaborate what type of "cost" the plaintiff shall recoup.  *See id.*

In cases where "federal statutes simply refer to 'costs,' . . . federal courts are limited to awarding the costs specified in [28 U.S.C.] §§ 1821 and 1920." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 339 (2019). In those two provisions, "Congress has specified six categories of litigation expenses that a federal court may award as 'costs,' and Congress has detailed how to calculate the amount of certain costs." *Id.* at 338–39 (footnote omitted); *see* 28 U.S.C. §§ 1821, 1920; *see also* LCvR 54.1(d) (listing costs that the Clerk of Court may award upon request). The Court will assess each of Plaintiffs' claimed expenses through the lens of those provisions.

Plaintiffs request $402 as a "Complaint Filing Fee." Pls.' Ex. C, ECF No. 26-3, at 2. Section 1920 authorizes "[d]ocket fees under section 1923 of this title." 28 U.S.C. § 1920(5); *see also* LCvR 54.1(d)(4) (allowing "[d]ocket fees and costs specified in 28 U.S.C. § 1923"). But § 1923 caps the taxable docket fee at "$20 on trial or final hearing (including a default judgment whether entered by the court or by the clerk) in civil, criminal, or admiralty cases." 28 U.S.C. § 1923(a). The Court hence will award $20.

Plaintiffs also claim $1,938.72 for "Complaint Translation to Pashto." Pls.' Ex. C at 2. Although § 1920 permits compensation for "interpreters" and "special interpretation services," 28 U.S.C. § 1920(6), the Supreme Court has ruled that "'compensation of interpreters' is limited to the cost of oral translation and does not include the cost of document translation." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 562 (2012). Plaintiffs thus cannot recover the cost of translating the Complaint.

Plaintiffs next demand $6,930 for "New York Times Publication." Pls.' Ex. C at 2. While LCvR 54.1(d)(2) lists "[c]osts of service of summons and complaint," neither § 1821 nor § 1920 includes that category. *See* 28 U.S.C. §§ 1821, 1920. Faced with a similar claimed cost for service by publication, the court in *Miller* decided to instead award it as part of the attorney's

fees by adding it as a line item to the lodestar calculation.  *See* 627 F. Supp. 3d at 1056.  As the court reasoned, "Plaintiffs expended significant time and resources in their effort to serve Defendant by publication," and their service costs were "reasonable given the particular circumstances of th[e] case."  *Id.*; *see also Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 17 (1st Cir. 2011) ("It is settled beyond peradventure that reasonable expenses, necessary for the prosecution of a case, are ancillary to and may be incorporated as part of a fee award under a prototypical federal fee-shifting statute.").  This Court is persuaded by *Miller*'s reasoning and will add the $6,930 sum to the lodestar amount.[1]

Plaintiffs finally request $5,000 for a "Taliban expert" fee.  Pls.' Ex. C at 2.  The Supreme Court has made clear that §§ 1821 and 1920 "do not authorize an award for expenses such as expert witness fees."  *Rimini St.*, 586 U.S. at 341.  Courts are "bound by the limit of § 1821[]" when awarding other expenses related to expert witnesses, such as travel and subsistence.  *Id.* at 340 (cleaned up); *see* 28 U.S.C. § 1821(b), (c); *see also* LCvR 54.1(d)(10) (authorizing "[w]itness fees pursuant to 28 U.S.C. § 1821(b), and travel and subsistence costs pursuant to 28 U.S.C. § 1821(c), paid to each witness who testified at a hearing or trial").  Here, the expert did not attend any court hearing or deposition as required by § 1821; he merely wrote a report.  *See* Pls.' Mot. Default J., ECF No. 20-1, at 12; Pls.' Expert Report, ECF No. 20-2. Plaintiffs therefore cannot recover any costs for this expert witness.

---

[1]  The Court will not do the same for any of the other claimed costs because they are expressly barred or limited by statute or binding precedent.

For these reasons, it is hereby

**ORDERED** that Plaintiffs are awarded $197,920 in attorney's fees; and it is further

**ORDERED** that Plaintiffs are awarded $20 in costs.

**SO ORDERED.**

Dated: April 3, 2026                                   _____
                                                      TREVOR N. McFADDEN, U.S.D.J.